(No. 20550.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HOWARD JOHNSON, Plaintiff in Error.

*Opinion filed February 18, 1931—Rehearing denied April 8, 1931.*

WM. SCOTT STEWART, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, JAMES B. SEARCY, and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was indicted with one Michael Dooman in the criminal court of Cook county on a charge of robbery while armed with a gun. Both were convicted. Dooman was sentenced to the penitentiary and plaintiff in error to the State reformatory. Plaintiff in error sued out this writ of error.

The complaining witness, John Holzapfel, testified that Johnson and Dooman came to his flat about two o'clock on the morning of January 6, 1929, and rang the doorbell; that Holzapfel and his wife and three other persons were present; that when the door was opened Johnson and Dooman came in and the former presented a revolver and ordered them to hold up their hands; that Dooman remained standing at the door; that Johnson required the witness' wife to turn out his pockets, and after searching the people Johnson went through the house while Dooman stood at the door with a gun in his hand; that they were in the house about twenty minutes; that the complaining witness had on his finger a diamond ring of the value of $400, and that when these men entered he slipped it into his vest pocket; that after searching the house Dooman declared that he wanted a match and thrust his hand into witness' pocket and took out the ring. This witness testified that he told Dooman that he did not want to lose the ring because his wife had given it to him; that he gave Dooman his card and told him if he would send the ring back he would send him the value of it, and that Dooman stated he probably would send the ring back. The testimony of this witness also is that he went out at different times with the officers looking for the defendants; that about two weeks thereafter they arrested

Dooman; that at the time of the arrest Dooman was asked if he had seen complaining witness, and he said he had. Asked if he was not at the premises of the complaining witness a couple of weeks before, he replied that he was. Johnson was later arrested at his home. The officers making the arrest asked Johnson if he knew Holzapfel, and Johnson replied that he did. Holzapfel testified that he saw Dooman and Johnson at the detective bureau two nights later, and that they stated they were there for robbing Holzapfel and his wife and Harold Cottenden and his wife, who were in the party on the night of the robbery. Harold Cottenden corroborated the testimony of Holzapfel as to the robbery and testified that seven dollars was taken from his pockets. Two police officers, Parrish and Whedon, testified concerning conversations had with Dooman and Johnson at the time of their arrest. Whedon stated that Dooman, in the presence of Johnson, said that they were in jail for robbery, and that Johnson said he was with Dooman. The defense is that Johnson and Dooman went to this flat at about twelve o'clock and drank intoxicating liquor there until they became so intoxicated that they did not know what was going on and that they had not robbed anybody.

The assignments of error are, that the evidence does not sustain the verdict, that the court made improper remarks in the presence of the jury, and that the jury were not properly instructed.

The statement of the substance of the testimony has been herein made, except that of the witnesses Connie Peterson and Arthur Dahl. The former stated that she went to this flat at one A. M. with Arthur Dahl and that Johnson and Dooman were there and were intoxicated. She stated that she and her escort did not stay long and that "the boys" were there when they left. She testified that she was a friend of the accused. Dahl testified that when he and Miss Peterson went up to this place the boys were there and were very drunk and that they got liquor there.

Neither of these witnesses testified to any other occurrence there. Dooman testified that he reached the Holzapfels' place about 12:30; that he drank beer and "moonshine" there; that there was some girl there and she got some money from him; that he went and asked the bar-tender to get her to give the money back and that the girl denied getting any money. Dooman testified that he saw a ring; that it was in the possession of the bar-tender; that the bar-tender pulled it out of his pocket and dropped it; that all of them looked for it and the bar-tender claimed he, Dooman, got it. He denied he had a gun, and testified he drank so much liquor that he finally became unconscious. Johnson testified that he was served drinks in this flat and was so drunk he did not know what was going on; that he did not have a gun and took no money from anybody; that he was in this flat again two weeks later and was asked where the man was who had the ring. The credibility of the witnesses was for the jury, and we are unable to see from this record that they were not justified in finding plaintiff in error guilty. The stories of the witnesses are contradictory. The defendants, though claiming to have been drunk, each tell of their actions at that time and place.

Counsel complains of the remarks of the trial court. It appears that the State's attorney asked the witness Peterson if she knew that a robbery had been committed on January 6, and she answered "No." Counsel for the defendants objected that she was not qualified to tell whether a robbery had been committed. The court said, "You may ask her if the robbery occurred while she was there," and the State's attorney again asked her if a robbery occurred while she was there, and she answered "No." It is argued that the judge, by using the expression "the robbery" instead of "a robbery" gave to the jury the impression that he thought a robbery had been committed. While the expression of the court may not have been as well guarded as it should have been, we are not impressed with the argument

that this was sufficient to prejudice the jury. The witness testified that nothing of the kind occurred while she was there.

Counsel complains of refusal of instruction No. 6 offered on behalf of the defendant. This instruction told the jury that if the defendants were so intoxicated or besotted with liquor as to be incapable of forming an intention to rob or steal they should be acquitted. Defendants testified in detail as to what they did on the evening in question. Johnson testified that while he did not remember how many drinks he had and that he had so much he did not know what was going on, yet he remembered that he did not have a gun and did not see any, that he did not take any money away from anybody and that he did not hold up anybody. Both of the accused testified as to their conduct during the evening.

It is argued that proof of robbery with a gun requires proof of a specific intent. Prior to the amendment of the Robbery statute the act provided that when the defendant was convicted of robbery, in order to subject him to the greater penalty for being armed with a dangerous weapon it was necessary to allege and prove that the person so guilty was armed with a dangerous weapon with the intent, if resisted, to kill or maim the victim. As amended in 1919 the act provides that if the defendant is armed with a dangerous weapon he shall be imprisoned in the penitentiary. The question of intent is no longer involved in a robbery charge and it is not required to be either charged or proved. (*People* v. *Hildebrand*, 307 Ill. 544.) There is, furthermore, no evidence on which to base such an instruction and it was not error to refuse it.

The case was one peculiarly for the jury and no error appears justifying a reversal of the judgment. The judgment will therefore be affirmed. *Judgment affirmed.*