(No. 33937.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* TALBOT JENNINGS, Plaintiff in Error.

*Opinion filed June 17, 1957—Rehearing denied September 19, 1957.*

GERALD W. GETTY, Public Defender, of Chicago, (JOHN M. BRANION and WILLIAM F. FITZPATRICK, of counsel,) for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (FRED G. LEACH, EDWIN A. STRUGALA, JOHN T. GALLAGHER, RUDOLPH L. JANEGA, and WILLIAM L. CARLIN, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

Talbot Jennings was convicted of armed robbery in 1949, and was sentenced to the penitentiary for a term of not less than 10 nor more than 25 years. He filed a petition under the Post-Conviction Hearing Act to review that judgment. His petition was dismissed without a hearing and this court denied his motion for a writ of error to review that ruling. The Supreme Court of the United States granted *certiorari*, vacated the judgment of this court, and remanded for further proceedings. (*Jennings* v. *Illinois*, 341 U.S. 947.) Thereafter this court remanded the case to the criminal court of Cook County. *People* v. *Jennings*, 411 Ill. 21.

After the case had been remanded an order was entered setting aside the judgment of conviction and awarding a new trial. The new trial resulted in another verdict of guilty, and the defendant was sentenced to the penitentiary for a term of not less than 3 nor more than 15 years. Thereafter he filed a petition under the Post-Conviction Hearing Act to review the second judgment of conviction. After an extended hearing the petition was denied and we have allowed a writ of error to review that judgment. The

transcript of the proceedings at the second trial is before us as a part of the record in the post-conviction case, and at defendant's request we have considered the case as here upon a writ of error to review the second judgment of conviction as well as upon writ of error to review the post-conviction judgment.

The first ground upon which it is here urged that the judgment of conviction should be set aside is that the trial court was without jurisdiction when it entered the second judgment of conviction. The jurisdiction of the criminal court of Cook County to try the defendant the second time is attacked upon technical grounds. It is first said that the judge who set aside the original judgment of conviction and ordered the new trial was without jurisdiction to do so. It is then argued that all proceedings in connection with the new trial, including the judgment of conviction, were therefore void. We need not consider whether the defendant can raise this latter issue, after participating fully in a lengthy trial without at any time suggesting the technical objection now urged, for we are of the opinion that the judge who ordered the new trial was authorized to do so.

The jurisdictional objection is that the judge of the superior court of Cook County who set aside the original judgment and ordered a new trial was not properly assigned to the criminal court of Cook County when he did so. Section 26 of article VI of the constitution establishes the criminal court of Cook County and provides that the terms of said court "shall be held by one or more of the judges of the circuit or superior court of Cook county, as nearly as may be in alternation, as may be determined by said judges, or provided by law. Said judges shall be *ex officio* judges of said court."

Hon. Alan E. Ashcraft presided at the first trial. He is a judge of the superior court and was then sitting by assignment as a judge of the criminal court. When the first post-conviction petition was filed in the criminal court,

his assignment to the criminal court had ended and he was then hearing civil cases in the superior court. By an order of the executive committee of the superior court, Judge Ashcraft was assigned to sit as a judge of the criminal court to conduct the hearing on Talbot Jennings' post-conviction petition, No. 61, "until the final disposition of that case."

It is the defendant's position that this assignment terminated when Judge Ashcraft ordered the petition dismissed, and that in the absence of a new assignment he was without jurisdiction of the case upon remand. We do not agree.

Of course the order dismissing the petition was a "final disposition" in the sense that it was subject to review. (Cf. *People* v. *Joyce,* 1 Ill.2d 225.) That does not mean, however, that it was the "final disposition" of the case contemplated by the order of assignment. It was not so interpreted by Judge Ashcraft, by the executive committee of the superior court who made no further assignment of any judge to hear the case, or indeed by the defendant who moved for a hearing before Judge Ashcraft after the case was remanded.

What is here involved is not a question of jurisdiction in the ordinary sense. The assignment of judges of the circuit and superior courts to sit as judges of the criminal court relates largely to the efficient and convenient administration of the business of the three courts. Defendant relies on *People ex rel. Chicago Bar Association* v. *Feinberg,* 348 Ill. 549, *Patchen* v. *Patchen,* 364 Ill. 178, and *People* v. *Sullivan,* 371 Ill. 264. The *Patchen case* sustained the authority of a judge of the superior court to hear a civil case while he was assigned to the criminal court. In the *Feinberg* and *Sullivan cases* there had been no order of the executive committee assigning the judges there involved to sit as judges of the criminal court. These cases do not bear upon the present problem which does not in-

volve the absence of any assignment whatever, but rather the interpretation of an assignment duly made by the executive committee.

Defendant also argues that he was not personally present when the order setting aside the original judgment of conviction was entered, and that the court therefore lacked jurisdiction. The contention is without merit. While a defendant in a criminal case has a constitutional right to be present at his trial, (*People* v. *Smith,* 6 Ill.2d 414,) that right does not carry over to post-conviction proceedings. The Post-Conviction Hearing Act provides, "In its discretion the court may order the petitioner brought before the court for the hearing." (Ill. Rev. Stat. 1955, chap. 38, par. 831.) In this case defendant was represented by counsel when the order was entered, and his own presence was unnecessary.

We hold that Judge Ashcraft did not lack jurisdiction to set aside the original judgment of conviction.

Defendant's second ground for reversal is that a coerced confession was admitted in evidence against him, and that some police officers who had a part in procuring that confession were not called as witnesses.

About noon on May 24, 1948, two armed men robbed a jewelry store in Oak Park, owned by Sidney L. Barr. They took money from Barr and jewelry from the showcases and the safe. The robbers used a peculiarly painted taxicab, and a description of the car was given to the police. The taxicab was finally located in Chicago, and on June 5, 1948, Edgar Morgan's connection with the taxicab was established and he was arrested. He signed a typed confession implicating Talbot Jennings, who was arrested in Chicago about 5:00 o'clock the next morning. Barr positively identified Jennings at the Oak Park police station on June 6, first about 8:00 A.M., and again that evening. Jennings signed Morgan's statement in the Oak Park station a few hours after he was arrested. The prosecution

did not offer this confession in evidence upon the trial because it was executed originally by Morgan alone, and "had nothing to do with Jennings other than it was read to Jennings that morning." A joint confession of Morgan and Jennings, taken at the police station in the early evening of June 6 was received in evidence. It is the admission of this confession that defendant attacks.

Defendant charged that police officers struck him, kicked his shins, and threatened to beat him further if he did not confess. These charges were denied by the officers named by the defendant, by other officers, and by Barr who was present when the joint confession was made. The trial judge carefully conducted a lengthy preliminary hearing on the admissibility of the confession. On the record before him he was warranted in receiving the confession in evidence unless, as the defendant contends, it was error to admit the confession because certain police officers were not produced as witnesses.

Where, as here, there is evidence that a confession has been extorted from an accused, the prosecution is required, if feasible, to produce every police officer and every other person connected with taking the confession in order to ascertain whether it was voluntary. (*People* v. *Wagoner*, 8 Ill.2d 188, 197; *People* v. *Sloss*, 412 Ill. 61, 70, 71; *People* v. *Ickes*, 370 Ill. 486, 490; *People* v. *Arendarczyk*, 367 Ill. 534, 537; *People* v. *Holick*, 337 Ill. 333, 337; *People* v. *Spranger*, 314 Ill. 602, 612; *People* v. *Sweeney*, 304 Ill. 502, 513; *People* v. *Rogers*, 303 Ill. 578, 590.) The question is whether that requirement was met in this case.

Summarizing the evidence that bears on this question, it appears that when defendant was arrested on June 6, police officers Nester, Piotter and Thor of Oak Park, and officer Vodvarka and another Chicago officer, unnamed, were present. These five officers took him to the police station at Forty-eighth Street, in Chicago; the three Oak Park officers then took him to the Eleventh Street head-

quarters in Chicago, and from there to Oak Park. When he was in Nester's office at the Oak Park station where he signed the confession which Morgan had previously made, Nester, Piotter, and possibly Thor, were present. In addition, Barr, the victim of the robbery, Morgan, and unnamed patrolmen were in Nester's office at various times but not when defendant signed the statement. Either officer Witte or officer Ayers drove defendant from Oak Park to the River Forest police station later in the morning of June 6. He was taken to River Forest to keep him separated from Morgan, who was also in the custody of the Oak Park police. Officer Willing was on duty at the River Forest station from 9:00 A.M. to 5:00 P.M. Officers Hildenbrand and Plant brought defendant back to Oak Park about 6:00 P.M. Officers Hutchison, Piotter, and Nester, as well as Morgan and Barr, were present in the sergeants' room in the Oak Park station when defendant and Morgan made the challenged joint confession. Kearin, the Oak Park chief of police, and others walked in and out of the room several times. Officers Hector and Plant then returned defendant to River Forest. Nester and Piotter are the only officers whom defendant charges with striking, threatening or otherwise abusing him.

Of the persons named, officers Nester, Vodvarka, Hutchison, Ayers, Willing, Piotter, Hector and Hildenbrand testified that neither they nor anyone in their presence struck, threatened or abused defendant, and that they observed no evidence of physical mistreatment.

Thor, Kearin and Witte were not called as witnesses by the prosecution. Thor had resigned from the police force and where he lived was unknown at the time of defendant's retrial. Although Thor was present when defendant was arrested and in Nester's room and the sergeants' room from time to time, defendant does not claim that he exerted physical violence on him or in any way urged him to confess.

At the hearing upon the admissibility of the confession, Barr and Morgan, and officers Nester, Hutchison and Piotter each excluded Kearin as a participant in the interrogation of defendant. It appears from the record upon the post-conviction hearing that, at most, Kearin had walked in and out of the sergeants' room of the station several times. Although Kearin was still chief of police at the time of the second trial and presumably available to testify, we do not see how defendant was prejudiced by his absence.

Officer Plant who, together with Hector and Hildenbrand, transported defendant to and from the Oak Park and River Forest police stations, did not testify. His availability was made known by an assistant State's Attorney, who pointed out that his testimony would be largely cumulative and repetitive of Hildenbrand's testimony. It appears that, by mutual agreement, Plant was not called as a witness.

Officer Witte, referred to as one of the patrolmen who took defendant to River Forest in the morning of June 6, did not testify. Defendant makes no complaint with regard to him, other than the general complaint that all officers who drove him back and forth to River Forest should have been called.

Several colloquies with counsel, in chambers as well as in open court, reflect Judge Green's insistence that all persons implicated by the defendant in obtaining his allegedly coerced confession be called as witnesses. Upon the post-conviction hearing Judge Green reminded defendant that at the second trial in 1953, he asked defendant's attorney whether there was any officer, or any other individual, present at the time of the alleged beating or who was able to give any information, whom defendant desired to call, and that after making his own check and conferring with defendant the attorney said that there were no additional witnesses who could give any pertinent information. Defendant said he did not recall any of these statements.

Every police officer directly involved in obtaining the challenged confession was examined. There is no claim that Thor, Kearin, Doan, Plant, Witte, or any unnamed Oak Park officer sought to extract the confession through pressure, physical or otherwise. They were not directly implicated by defendant in this regard, either upon the second trial or at the post-conviction hearing. The threats that defendant testified were made by River Forest officers were made after he had confessed on June 6 and had been returned to the River Forest station for the night.

The rule that requires that the police officers be produced as witnesses where there is a claim of a coerced confession is a practical one, designed to assist the court in determining whether or not the confession was voluntary. It is not, as defendant seems to believe, a mechanical rule that requires that every person who had any contact with the defendant from his arrest to the signing of the confession be produced as a witness. A far different situation obtained in the *Sloss case* (412 Ill. 61) upon which defendant principally relies. There, police officers who were alleged to have been present when defendant was subjected to physical violence and persons to whom he said he complained, did not testify upon the hearing as to admissibility of the confession, and no reason was given for the failure to call them as witnesses. Here, every person who could reasonably be considered a material witness on the question of the voluntary nature of the confession was produced and testified.

Defendant directs attention to differences in Morgan's confession which he signed in the morning of June 6 and the joint confession which he signed in the evening of the same day. The first states that defendant actually committed the robbery, brandishing a gun at Barr; the second states that Morgan announced the "stick-up" and was the bandit who actually perpetrated the robbery. The discrepancies

noted are immaterial in character and do not afford a basis for reversal.

The judgments of the criminal court of Cook County are affirmed.

*Judgments affirmed.*