(No. 37571.—

The People of the State of Illinois, Defendant in Error, *vs.* James Massie Clark, Plaintiff in Error.

*Opinion filed Nov. 26, 1963.—Rehearing denied Jan. 20, 1964.*

JOEL J. SPRAYREGEN, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER C. KISSANE and RICHARD T. BUCK, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

James Massie Clark, the defendant, was tried in the criminal court of Cook County and found guilty under an indictment wherein he was charged, jointly with William Byrd and Jessie Knox, with the crime of robbery. He was sentenced to the penitentiary for a term of two to five years and now prosecutes this writ of error contending that the evidence was insufficient to sustain the conviction, that the indictment was defective, and that he was not present at the arraignment, in violation of his right to be in attendance at all phases of his trial. Defendant's presentation here concedes that Byrd committed a robbery, and it is his theory under the evidence that he was an innocent bystander who did not participate in the crime, but in fact intervened to prevent further assault on the robbery victim.

The evidence on behalf of the People shows that Nicholas Unterreiner, the complaining witness, was fifty-nine

years old, had resided in this country less than five years, and spoke German and Yugoslavian but very little English. Testifying through an interpreter, he stated that as he was walking home from work at approximately 12:30 A.M. on June 17, 1961, he noticed four men who first walked behind him, and then passed him. As he neared an elevated railroad structure one of the men asked him a question, which he did not understand, then grabbed him by the hand and pulled him underneath the elevated structure. There, according to the witness, the men beat him about the head and kicked him after he had fallen down, inflicting severe lacerations and bruises. He called for help, became dazed and, it is to be gathered from his testimony, was unaware that a wallet and some keys were missing from his person until they were returned to him by a police officer under circumstances to be detailed. The witness could not identify his assailants, explaining that blood from cuts on his face obscured his vision.

Raymond Vahosky testified for the prosecution that he and two friends were across the street talking when he saw two men, whom he later identified as Byrd and Knox, beating and kicking Unterreiner. The defendant, he said, was standing "in the background." The witness and his friends ran across the street shouting, whereupon Knox and Byrd stopped the beating and ran off. However, they returned at once, Byrd becoming belligerent with Vahosky and Knox drawing a knife. At this time defendant stepped out of the shadows and stopped the altercation by telling his companions that he knew Vahosky and that the latter was a judo instructor. Meanwhile, Unterreiner was lying on the ground nearby with his coat over his head.

A Chicago police officer, Charles Levecke, passed the scene as he was driving home from duty and saw what he characterized as "two colored boys," whom he also identified as Byrd and Knox, fighting with a man. The officer parked his car down the street and walked back to the scene, arriv-

ing at the time the quarrel with Vahosky was being concluded. When the officer approached, Knox fled from the scene and when defendant and Byrd started to walk away the officer stopped them and told them they were under arrest for fighting. He became aware of Unterreiner's presence at about this time, noting the latter was badly cut and bleeding, and upon being told by Vahosky that the boys "had been robbing the old man," searched Byrd and found some keys and a wallet which Unterreiner identified as his. While the officer was putting handcuffs on Byrd, the defendant slipped through a crowd that had gathered and escaped.

Defendant was subsequently apprehended and was identified by Vahosky from a line-up of prisoners. In a statement given to the police, defendant said that he was unemployed, that he had met Byrd and Knox about 11:30 P.M. of the night in question at the former's home, and that the three of them set out for a tap room "to get somebody to buy them a beer." After stating that they were walking behind a man in the vicinity of Halsted Street and North Avenue, the statement continued: "Byrd ran up and hit him and the man stumbled forward. At this time Byrd began hitting him with both fists and forcing him under the elevated tracks. After that I jumped in and hit him in the jaw. Knox hit him once and Byrd started back on him. Then the man went down. And when the man went down Byrd continued to hit him. Me and Knox felt sorry for this man and tried to drag Byrd off. At that time a man I know as Chest [Vahosky] came along and tried to break it up. Byrd went up to this man Chest to fight with him when the police came."

Testifying at the trial, defendant denied that Knox was at first involved and stated that as he and Byrd were walking along Byrd and Unterreiner exchanged words he could not understand, and that Byrd then struck Unterreiner and knocked him down. Defendant denied that he had struck or kicked the complaining witness, but testified that he had

struck Byrd and attempted to pull him off Unterreiner in order to break up the fight. When confronted with his statement he admitted making it but denied that he had read it in full, and said that he was referring to Byrd when he said he had "jumped in and hit him in the jaw." In addition, he testified that he had not seen the wallet, that Knox didn't arrive at the scene until Byrd was having words with Vahosky, and that he, defendant, had run away when officer Levecke started making arrests because he was on probation for another offense.

Knox, who was jointly tried with defendant, denied that he had been present when Unterreiner was being beaten, and testified that he had just happened along as Byrd was having trouble with Vahosky and that he drew his knife to give assistance to Byrd.

Although he had pleaded guilty to the robbery charge, Byrd appeared as a witness for the defense and testified that the affair was no more than a fight provoked when Unterreiner, whom he described as drunk, called him a "nigger" as they were passing in the street. Unterreiner, we interject, admitted that he had emerged from a tavern shortly before the attack, but denied that he had been drinking and said that he had gone in only to purchase cigarettes. Continuing with Byrd's testimony, he denied that Unterreiner had been kicked, or that he had gone into Unterreiner's pockets, and represented that Levecke had the wallet in his hand before he ever searched Byrd. On this point, however, Vahosky corroborated the testimony of the officer that the keys and wallet were discovered on and taken from Byrd's person. Concluding his testimony, Byrd stated that Knox was not present as he was fighting with Unterreiner, and that defendant had not struck Unterreiner, but had instead struck the witness in an effort to break up the fight.

We agree there is a puzzling inconsistency in the People's proof arising from the circumstance that defendant's written statement, given its plain, ordinary and grammatical

meaning, undoubtedly contains an admission that he struck the complaining witness, whereas Vahosky and Levecke testified that only Byrd and Knox participated in the attack. However, even if this ambiguity be resolved in defendant's favor, it is our opinion, under settled principles and the evidence, that there is still proof of guilt beyond a reasonable doubt.

While mere presence or negative acquiescence is not sufficient to constitute a person a principal to a crime, one may aid and abet without actively participating in the overt act, and if the proof shows he was present at the crime without disapproving or opposing it, the trier of fact may competently consider this conduct in connection with other circumstances and thereby reach a conclusion that such person assented to the commission of the criminal act, lent his countenance and approval and was thereby aiding and abetting the crime. (*People* v. *Washington,* 26 Ill.2d 207; *People* v. *Thicksten,* 14 Ill.2d 132.) Here, even if we assume defendant only "stood in the background" while the attack and robbery were taking place, the trial court, whose function it was to determine the credibility of the witnesses and to resolve the conflicts in their testimony, could justifiably find more than mere presence and negative acquiescence on defendant's part. In our opinion it is not a difficult choice to conclude that the assault on Unterreiner was pursuant to a plan to rob him, rather than a mere spontaneous fight resulting from insulting language. The manner in which Unterreiner was waylaid and pulled into the shadows under the elevated structure, and the dispatch with which the victim's wallet found its way into Byrd's pockets can lead to no other conclusion. And while defendant testified that he attempted only to prevent the assault on Unterreiner, such testimony was contradicted by his written statement and weakened by the circumstance of his flight when police authority appeared. It is true that Byrd corroborated defendant in this regard, but the trial court did not have to believe him and

could properly consider Bryd's motives in accepting all the blame and the inconsistency of his testimony with that of the eyewitness, Vahosky. From all of the facts and circumstances, the court could reasonably find defendant knew a robbery was to be committed, that he participated therein, and that he was guilty as a principal.

Although we think the indictment was sufficient to apprise defendant of the crime with which he was charged, (and certainly neither surprise nor confusion was exhibited at the trial,) his contention that it was indefinite and uncertain comes too late for the first time on appeal. Technical objections to an indictment cannot first be heard subsequent to trial, and having failed to raise this objection by an appropriate motion in the trial court defendant must be deemed to have waived it. *People* v. *Barney,* 15 Ill.2d 503; *People* v. *Ostrowski,* 402 Ill. 106.

Finally, we have examined the contention that defendant was not present at his arraignment and find it to be without merit. The record of the trial court, which imports verity and is unimpeachable evidence of the proceedings in the lower court, (*People* v. *Pulliam,* 352 Ill. 318,) recites that defendant was present with his counsel during arraignment, and we find nothing else within the record which impeaches such recital.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*