(No. 38459.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LARRY RICHARDSON, Plaintiff in Error.

*Opinion filed May 20, 1965.*

SCHAEFER, J., dissenting.

SYDNEY E. FOSTER, of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER C. KISSANE and KENNETH L. GILLIS, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

The defendant was convicted of murder in a bench trial in the criminal court of Cook County and sentenced to a term of twenty-five years in the penitentiary. On this writ of error he contends that a joint statement signed by him was improperly admitted into evidence over his objection and that the evidence did not establish his guilt beyond a reasonable doubt.

Shortly after midnight on Saturday, August 12, 1961, Crispulo Mangaser was robbed and killed while returning from his job in Chicago. A witness, Milton Foley, testified that he passed Mangaser on the sidewalk just prior to the attack. Upon hearing "a striking" he turned and observed Mangaser lying on the sidewalk and a group of twelve or thirteen boys running across the street toward the victim. As the boys crowded around Mangaser, Foley saw them hitting him "with something", heard the sound of clothing being ripped and also "heard some change rattling". The boys then fled the scene.

A police officer who investigated the incident testified that when he arrived at the scene Mangaser was lying unconscious on the sidewalk with his pants ripped and pockets turned inside out. The victim was taken to a hospital where he died without having regained consciousness.

The pathologist who performed an autopsy on the de-

ceased testified that an external examination of the body revealed "multiple abrasions and contusions in the left side of the head, left side of the face, in both sides of the forehead, contusions in the left eye and right eye". An internal examination of the skull showed a concave fracture of the skull with "marked hemorrhages" and "multiple contusions and lacerations of the brain". The doctor expressed an opinion that such injuries could not have been caused by a single fall to the pavement. He was of the further opinion that death was caused by multiple "traumatic, cranial, cerebral injuries".

At about 2:30 A.M. on Monday, August 14, defendant Larry Richardson, who was fifteen years of age, was arrested at his home in the presence of his father and taken to the Fillmore Police Station together with two other co-defendants. The three boys were questioned for a short period of time, and, according to the testimony of a Chicago police officer, they were informed of their right to remain silent and were offered food. The boys were then taken to the Cook County juvenile detention dormitory at about 4:30 A.M. where they were fed and permitted to watch television. They were also apparently afforded an opportunity to sleep, but whether the boys actually did sleep is doubtful.

At about 2:30 P.M. Monday afternoon defendant was taken to the Fourth Area youth offices together with several other co-defendants for questioning. Defendant and co-defendants Alfred Johnson and Chester Solomon made a joint statement in the presence of an assistant State's Attorney and a court reporter. It is this statement which defendant contends was improperly admitted into evidence. Following the taking of the statement the boys were returned to the juvenile home for the night. At about noon the next day, the three boys who gave the joint statement were taken to the State's Attorney's office where they signed the statement.

We shall first turn our attention to defendant's conten-

tion that the joint statement was obtained under circumstances which rendered the statement inadmissible. In particular, he points to the fact of his youthful age, and the fact that he signed the statement after he had been in custody for a period of thirty-four hours during which time he was never informed of his right to counsel. He further contends that the statement was never read to him prior to his signing it.

It is true that defendant was not represented by counsel during the period he was held in custody prior to giving the statement, but the record contains no indication that he ever requested counsel. Under such circumstances the failure to advise defendant of his right to counsel did not in and of itself render the statement inadmissible. (*People* v. *Hartgraves*, 31 Ill.2d 375; *People* v. *Lewis*, 32 Ill.2d 391). It is, however, an attendant circumstance "which the accused is entitled to have appropriately considered in determining voluntariness and admissibility of his confession". (*Haynes* v. *State of Washington*, 373 U.S. 503, 517, 10 L. ed. 2d 513.) An examination of the record reveals no indication that any coercion was used in obtaining the joint statement and defendant himself testified that he was treated well and was promised nothing prior to the time he gave the statement and signed it. Furthermore, it appears that defendant was never subjected to extensive or lengthy questioning periods. At the hearing on the motion to suppress the statement, the trial judge heard the testimony of an assistant State's Attorney that he carefully read the statement to defendant before he signed it. The judge was in a better position than we to determine the credibility of the witnesses and to determine whether under all the circumstances the statement was given voluntarily and not under the influence of any type of coercion. On the facts of this case, we cannot say that the trial judge erred in admitting the statement.

This brings us to a consideration of defendant's con-

tention that the evidence did not establish his guilt beyond a reasonable doubt. The uncontradicted evidence is that defendant attended a dance in a community hall on the night of August 11, 1961. After the dance he went to the corner of Sixteenth Street and Lawndale Avenue, where he met twelve other boys, including co-defendants Solomon and Johnson. It appears that the boys were members of a gang called the Vice Lords and that they were "hunting for Cobras", another gang. Upon seeing Mangaser, Chester Solomon stated to the group "I will get me some money" and ran across the street where he knocked Mangaser to the ground when the latter refused to give him a dime. The other boys, including defendant, rushed across the street and surrounded the victim. The medical evidence, when considered with Milton Foley's testimony, supports the conclusion that Mangaser was then subjected to further beating about the head which caused his death. In the joint statement, Solomon stated that he saw Richardson strike the victim with an umbrella, but later in the statement said that he was not telling the truth and that he really did not know whether or not defendant struck the deceased. Defendant did not immediately respond to Solomon's accusation, although in response to a question by the assistant State's Attorney, he admitted carrying an umbrella, but denied striking the deceased. In the joint statement Alfred Johnson stated that Solomon, defendant and several others took money from the victims' pockets. Defendant again made no response to Johnson's accusation.

It is the defendant's primary contention that the evidence failed to show a common design or purpose to commit a felonious act and that he should not, therefore, be held accountable for the actions of other members of the group. We have held, however, that proof of a common purpose need not be supported by words of agreement but can be drawn from the circumstances surrounding the commission of an act by a group. (See *People* v. *Rybka,* 16

Ill.2d 394; *People* v. *Clark,* 30 Ill.2d 67.) Furthermore, the fact that the criminal acts were not committed pursuant to a preconceived plan is not a defense if the evidence indicates involvement on the part of the accused in the spontaneous acts of the group. "While mere presence or negative acquiesence is not sufficient to constitute a person a principal to a crime, one may aid and abet, without actively participating in the overt act, and if the proof shows he was present at the crime without disapproving or opposing it, the trier of fact may competently consider this conduct in connection with other circumstances and thereby reach a conclusion that such person assented to the commission of the criminal act, lent his countenance and approval and was thereby aiding and abetting the crime. (*People* v. *Washington,* 26 Ill.2d 207; *People* v. *Thicksten,* 14 Ill.2d 132.)." (30 Ill.2d at 72.) A consideration of all the evidence in this case supports the conclusion that defendant was not an innocent bystander, but instead aided and abetted the group of boys which robbed and killed Crispulo Mangaser.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCHAEFER dissenting:

In my opinion the joint statement that was taken in question and answer form by an assistant State's Attorney was inadmissible under the decision of the Supreme Court of the United States in *Escobedo* v. *Illinois,* 378 U.S. 478, whether the opinion in that case is read broadly or narrowly.

For many reasons one who is being interrogated concerning a crime may prefer not to consult with counsel, and so it is not always implausible to hold that a mature defendant waives his right to counsel when he fails to assert it. It may well be that interrogation by a prosecuting attorney ordinarily has advantages over police interrogation, but in

this case the attorney for the prosecution was not called in until the police officers had concluded their interrogation and had secured admissions.

This defendant was fifteen years old and in eighth grade. Whatever may have been the situation during his interrogation by police officers, this defendant's right to counsel certainly attached when the prosecution found it necessary to use an attorney in questioning him. At least at that point he was entitled to be told that he need not answer questions, and to be advised of his right to counsel.