(No. 38034.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHESTER SOLOMON, Plaintiff in Error.

*Opinion filed October 28, 1966.*

GEORGE A. COLLINS, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General and ELMER C. KIS-

SANE and KENNETH L. GILLIS, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

The defendant, Chester Solomon, was convicted of murder in a joint bench trial with Larry Richardson and Alfred Johnson in the circuit court of Cook County. He was sentenced to a term of forty years in the penitentiary. On this writ of error he contends that the trial court erred in denying his motion to suppress a certain written confession obtained by the police after his arrest and that the evidence does not establish his guilt beyond a reasonable doubt.

The facts concerning the murder are as set forth in our opinion in *People* v. *Richardson,* 32 Ill.2d 472, in which we affirmed the conviction of Chester Solomon's codefendant, Larry Richardson. The facts will therefore be only briefly summarized here. On August 12, 1961, Crispulo Mangaser, was assaulted, robbed and killed by a group of young boys in Chicago. Death was caused by multiple injuries to the head. The codefendants in this case were arrested at various times.

Defendant, Chester Solomon, who was sixteen years old, was arrested at about 11:50 A.M. on August 14, 1961, and taken to Fourth Area Police Headquarters by Chicago police officer Joe Mayo. Officer Mayo testified that he talked to Solomon for about fifteen minutes and then departed to the Audy Home, a juvenile detention dormitory, to pick up codefendants Larry Richardson and Alfred Johnson. Officer Mayo brought Richardson and Johnson back to Fourth Area Headquarters where officer Mayo and his partner, Rhey Orme, spoke to Solomon again for about ten minutes. At that time defendant gave an oral statement admitting his part in the murder. Officer Mayo testified that he asked de-

fendant and his codefendants whether they wished anything to eat, and they said that they did not. Nevertheless, sandwiches were brought to them during the afternoon at which time they all ate.

At some time between 6:30 and 7:30 P.M. on that day, assistant State's Attorney Joseph Gill arrived and took a joint statement in question-and-answer form from defendant and his codefendants. A court reporter was present, and the statement was later reduced to writing. In the statement, defendant admitted that he had run up to the victim, asked him for a dime, and upon being refused, hit him and struck him to the ground; that the other boys then gathered around and searched the victim's pockets for money; and that the victim was then also beaten about the head by one of the boys. It is this statement which was the subject of defendant's motion to suppress. Following the taking of this statement, defendant and his codefendants were taken to the Audy Home where they were provided quarters for the night.

Shortly after noon the next day, August 15, 1961, defendant was taken to the State's Attorney's office where he and codefendants Richardson and Johnson signed the joint statement which had been taken the preceding evening. Officer Rhey Orme testified that he heard the entire statement read to defendant and his codefendants before they signed it. Assistant State's Attorney Mitchell Edelson, Jr. testified that he asked each boy if the statement was correct and that each said yes and signed it voluntarily.

At the hearing on the motion to suppress the confession, defendant testified that he was questioned throughout the day on August 14, 1961, that he was not given any food to eat, and that he was told to sign a written statement the next day, of the contents of which he was unaware. On this review, he contends that these circumstances, together with the fact that he was in police custody for about twenty-

five hours between the time of his arrest and the time that he signed the statement, rendered the statement involuntary and inadmissible.

It is apparent that there is a conflict of testimony with regard to the circumstances under which the confession in this case was obtained. We are of the opinion, however, that the State's evidence, if believed, was sufficient to support a finding that the confession in this case was voluntary. No claim is here made that physical brutality, threats or promises were made, nor does defendant contend that he ever requested permission to see a lawyer or any other person. (See *People* v. *Hartgraves,* 31 Ill.2d 375.) There was testimony by the police that defendant was never subjected to long periods of questioning. There was also testimony that food was provided to the defendant during the time he was in custody, and that he was taken to a juvenile dormitory where he spent the night. There is further testimony that the written statement was carefully read to the defendant, that he was asked if the statement was correct, and that after answering affirmatively, defendant signed the statement willingly and without any type of coercion. The circumstances under which this statement was given were not such as to render it involuntary and inadmissible. See *People* v. *Richardson,* 32 Ill.2d 472.

In our opinion, the evidence was clearly sufficient to establish defendant's guilt beyond a reasonable doubt. Defendant's contention to the contrary cannot be sustained.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

SCHAEFER, J., dissenting:

I dissent for the reasons stated in my dissent in *People* v. *Richardson,* 32 Ill.2d 472, 477.