THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES T. BURKS, Defendant-Appellant.

(No. 73-389; )

Second District (1st Division)—May 23, 1975.

*Supplemental opinion upon denial of rehearing July 7, 1975.*

Ralph Ruebner, of State Appellate Defender's Office, of Elgin, for appellant.

John J. Bowman, State's Attorney, of Wheaton (Malcolm F. Smith, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

The defendant was tried by a jury, found guilty of the offenses of burglary and armed robbery and sentenced to the State Penitentiary for a period of 5-12 years.

In this appeal the defendant has raised 5 issues which he contends are reversible error. The contentions of the defendant are: (1) whether the trial court erred in denying defendant's motion to suppress both the oral and written statements; he further states that the State failed to list all witnesses to these statements and failed to produce all material witnesses thereto at the pretrial hearing; (2) whether defendant's guilt was proven beyond a reasonable doubt; (3) whether the trial court erred in refusing defendant's tendered instruction setting forth the issues that must be proved by the State in order to sustain the charge of armed robbery where the State attempted to prove defendant's guilt by accountability principles; (4) whether the prosecution committed reversible error in commenting during the closing argument upon the defendant's failure to call a witness in his own behalf; and (5) whether the trial court erred in entering judgment on the jury verdicts of guilty of armed robbery and burglary where both offenses both allegedly arose from the same conduct.

On the morning of October 18, 1972, defendant, Robert Johnson, and Dorothy "Barbara" Jones drove from the west side of Chicago to Winfield. Dorothy Jones was driving and the car was owned by one "Benny." The car was driven to the residence of Mrs. Jane Ruehle, located on Roosevelt Road in Winfield, Illinois. Mrs. Ruehle was taking a bath and she looked out of the window from the second floor. She noticed a green car parked

in her driveway. She observed a black man coming toward her door. The man looked through the window of the door and Mrs. Ruehle called the police. The black man was then seen by her as he ran around the front of the house to the back yard. She then walked to the bedroom door where she could see the man taking a storm window off her bathroom window and saw him coming in the window. She returned to the telephone, requested the operator to get help and then laid the telephone down. She went to her west door. Upon arriving at the door she looked outside and saw a black man 2 or 3 feet from the windowpane, whom she subsequently identified as the defendant, James T. Burks.

The man who entered the residence through the bathroom window then grabbed her around the neck, stuck a knife to her throat, threatened her and demanded her money. He took her into one of the bedrooms where he tied her hands and feet with strips from a bedsheet he tore up and gagged her. The black man in the house subsequently identified by her was Robert Johnson. He repeatedly threatened to kill her if she would not give him money. She was taken upstairs by him and she observed Johnson take several items down the stairs and return several times. At one time she heard another voice in the house which she believed to be a male voice.

She also testified that she saw a black female by the car of the defendants who was wearing an Afro haircut and appeared to be zipping up her pants. After the defendant Johnson left the premises Mrs. Ruehle succeeded in extracting herself from her bindings which he had placed upon her feet and arms; she then looked out of the window and saw a squad car pull into the driveway. At that time she saw a black person running north toward Roosevelt Road. Mrs. Ruehle then ran out the door, got into the squad car, locked the car doors and sounded the horn. Robert Johnson and Dorothy Jones were apprehended a short distance from the premises, and the defendant herein, James T. Burks, was apprehended within a few minutes by Trooper Wills who testified that he had been given the description of the subject who had run southwest through a field away from the house. The defendant Burks was apprehended by Trooper Wills as he was walking north on Purnell Road. Defendant's pants were wet and filled with burrs and he was wearing a jacket described as a "linen-type colored jacket, light khaki, brown light jacket" or a "dark brown medium length jacket." The three subjects were placed in a squad car and taken to the Du Page County sheriff's office. The green car, which had been parked in Mrs. Ruehle's driveway, was searched and various items which had been taken from the Ruehle residence were found therein. Upon the person of Robert Johnson were found four watches which were subsequently identified by Mrs. Ruehle as being her property.

We turn to the first contention of the defendant that the oral and written statements should have been suppressed where the State failed to list all of the witnesses. It is to be noted that prior to trial a hearing was had on the admissibility of the oral and written confession. The motion to suppress was denied.

Defendant contends in this argument that all witnesses to the statement should have been produced. Actually, the statements, both oral and written, were taken from the defendant by Detective Edmond Lowe and Detective Lepic in the Du Page County jail. There is no evidence that any officer had any part in the taking of the statement from defendant except Officers Lowe and Lepic. Officers McNechnie and Brancato were in the room from time to time and at one point Officer Brancato, at the trial, was asked if he took part in the interrogating or talking to the defendant, to which he replied he had not. In reply to the defendant's motion for discovery the State listed both Officer McKechnie and Officer Brancato at witnesses. Detective Lowe and Detective Lepic were listed as witnesses to the written confession. While it is true that these officers, and perhaps others, were in and out of the room where the defendant was being interrogated, there is no evidence that they took part in any way in obtaining the confession of the defendant herein. In *People v. Sims* (1961), 21 Ill.2d 425, 432, 173 N.E.2d 494, 497, the supreme court, in considering a number of cases involving this question, stated:

> "The principle that emerges clearly from all these cases is that the persons who must be called as witnesses or whose absence must be explained are those persons whose testimony would be material on the issue of the voluntary nature of the confession."

In *People v. Jennings* (1957), 11 Ill.2d 610, 144 N.E.2d 612, the court stated that the rule which requires police officers to be produced as witnesses where there is a claim of a coerced confession is not a mechanical rule that requires that every person who had any contact with the defendant from his arrest to the signing of the confession be produced as a witness.

■■ The basic premise alleged indirectly by the defendant is that he was in withdrawal from narcotics administered between 8:30 and 9:30 on the morning of the offense and that Detectives Lowe and Lepic stated that he would not receive medication or medical help unless he signed the statement in question. The detectives specifically denied this. The defendant testified that he had thrown up both before and after he signed the statement and that he was experiencing withdrawal at that time. In answer to this contention the State put Dr. Tuteur on as a witness. Dr. Tuteur had considerable experience with narcotics patients going through withdrawal in his position as a doctor in charge of those patients in the

Elgin State Hospital. In answer to a hypothetical question he stated definitely that a party who took methadone or heroin at approximately 8:30 to 9:30 in the morning would not be going through withdrawal at 6 in the evening of the same day. On a close examination of the record herein we are unable to find that the officers who may have walked in and out of the room were material witnesses to the confession. We fail to see how either of the officers, either McKechnie or Brancato, were material to the taking of the statement and find no error in this regard.

The next contention of the defendant is that he was not proven guilty beyond a reasonable doubt. In support of this contention he contends that the identification of him by the victim, Mrs. Ruehle, was so doubtful that it does not constitute identification and that the admission of his alleged, uncorroborated oral statement and subsequent written statement were improper. In order to put this argument in proper perspective we have the undisputed evidence, not only by the victim that the defendant was present at the scene, but also defendant's own statement that he was there. Defendant does not deny that he drove from Chicago to the premises. He does not deny that he fled the scene and was apprehended by the police on Purnell Road nearby. In explanation of his activities he contends that he was in a drugged stupor and did not awaken until he and his companions were in the driveway of the Ruehle residence. He contends that his statement that he removed the stolen articles from the premises was not correct. In that statement he said:

> "What went on in this house I do not know. I only carried some items from the rear of an unfamiliar house to the car trunk."

We have before us the admitted presence of the defendant at the scene of the crime, the identification of the defendant by the victim, his prior statement that he helped remove the loot from the premises and, additionally, the statement by the victim that she heard the voices of two males in her house. When we add to this the flight of the defendant and his apprehension shortly thereafter, we find the jury was justified in not believing the defendant's statement that he merely happened to be at the scene.

■■ This court recognizes the principle that mere presence of a person at the scene of a crime is not sufficient to constitute him guilty of a crime. The cases are numerous to this effect; however, presence, coupled with identification and defendant's statement pertaining to the offense, is sufficient evidence for the jury to convict. In a somewhat similar case, *People v. Clark* (1963), 30 Ill.2d 67, 72, 195 N.E.2d 157, 160, the court stated:

> "While mere presence or negative acquiescence is not sufficient to constitute a person a principle to a crime, one may aid and abet without actively participating in the overt act, and if the proof

shows he was present at the crime without disapproving or opposing it, the trier of fact may competently consider this conduct in connection with other circumstances and thereby reach a conclusion that such person assented to the commission of the criminal act, lent his countenance and approval and was thereby aiding and abetting the crime. (*People v. Washington*, 26 Ill.2d 207; *People v. Thicksten*, 14 Ill.2d 132.) Here, even if we assume defendant only 'stood in the background' while the attack and robbery were taking place, the trial court, whose function it was to determine the credibility of the witnesses and to resolve the conflicts in their testimony, could justifiably find more than mere presence and negative acquiescence on defendant's part."

We have repeatedly said that we will not substitute our opinion for that of the jury in such a situation as we have before us relating to the credibility of the witnesses and the facts for the determination by the jury as to the guilt of the defendant.

■■ We next turn to the contention of the defendant that the jury was not adequately instructed because the trial court refused to give an instruction defining the offense of armed robbery which included the phrase "that the defendant was then capable of acting knowingly." (See IPI—Criminal, 25.02). This phrase, which the defendant sought to insert in his instruction, is not found in IPI Instruction 14.02 which defines the issues in armed robbery. Armed robbery is not a specific intent offense, and an allegation as to intent is neither necessary in the indictment nor is it a necessary element of proof by the State. (See *People v. Whelan* (1971), 132 Ill.App.2d 2, 267 N.E.2d 364; *People v. Johnson* (1931), 343 Ill. 273, 175 N.E. 394.) It is to be noted that the jury was instructed that to sustain the charge of burglary it is necessary that the defendant be charged with knowledge and with intent to commit the crime. This was set forth in the State's instruction herein as to burglary. (IPI 14.06.) Likewise, the jury was further instructed that:

"A drugged person is criminally responsible for his conduct unless his drugged condition renders him incapable of acting knowingly."

We therefore find the trial court's refusal to give an instruction relative to armed robbery containing the phrase that the defendant was acting "knowingly" or "intentionally" was proper. A voluntary drugged condition is not a defense to a crime such as armed robbery where specific intent is not a necessary element.

■ The defendant next contends that the prosecution committed reversible error in closing argument by commenting upon the defendant's failure to call a witness in his behalf at the trial. The statement complained of is as follows:

"Mr. Burks said that when he left [the scene] at quarter to 12:00

Dorothy Jones, who conveniently is not here at trial, Dorothy Jones was carrying the items from the house to the trunk."

The counsel for the defendant did not object to this statement. In *People v. Moore* (1973), 55 Ill.2d 570, 576, 304 N.E.2d 622, 625, the supreme court stated:

"Any error in closing argument, as here, may be waived by failure to object thereto."

The supreme court therein cited *People v. Edwards* (1973), 55 Ill.2d 25, 35, 302 N.E.2d 306, 311. In *Edwards* the supreme court found no objection had been made by the defendant to the argument of the prosecutor and went on to state:

"We have examined the closing arguments and do not find the remarks of which defendant complains to be so inflammatory and improper as to require, in the absence of objections, any further consideration by this court." (55 Ill.2d 25, 35.)

We find that to be the situation in the case before us. We find the comment of the prosecutor was not a material factor in the conviction of the defendant.

The last contention of the defendant is that the court erred in entering judgment on the jury verdicts of guilty of both armed robbery and burglary and that the judgment for the lesser offense of burglary should be vacated. In support of this contention he has cited *People v. Lilly* (1974), 56 Ill.2d 493, 309 N.E.2d 1. In *Lilly*, the defendant was found guilty of both rape and indecent liberties arising out of the single act of the defendant. The Supreme Court held that there could be but one conviction for the related offenses of rape and indecent liberties. *Lilly* is not applicable to the facts of the case before us. We find that *People v. Johnson* (1970), 44 Ill.2d 463, 475, 256 N.E.2d 343, 350, is controlling. The court there found that while it is true there may not be double punishment for two offenses resulting from the same conduct, nonetheless, this rule does not apply to situations

"* * * in which more than one offense arises from a series of closely related acts and the crimes are clearly distinct and require different elements of proof. Specifically, we are convinced that the statutory strictures have no application in this case where the charges are burglary and rape. These are separate and distinct crimes requiring entirely different proof to sustain them. The rape has no necessary connection with the burglary as is evident when we stop to consider that the burglary was complete before the defendant laid a hand on the victim." (44 Ill.2d 463, 475.)

Similarly, the supreme court in *People v. Harper* (1972), 50 Ill.2d 296, 302, 278 N.E.2d 771, 775, considered defendant's contention that imposi-

tion of two separate sentences for the crime of rape and robbery of the same person was improper because both crimes involved the same victim and arose out of the same course of conduct. The court rejected that theory and stated:

> "While it is true that the rape and the robbery occurred in a series of acts committed at the same place and within a short time, it is equally true that they constituted separate acts involving different elements. As such, they were separate offenses for which concurrent sentences were both constitutionally and statutorily permissible." (50 Ill.2d 296, 302.)

While it is true that a single criminal act might be the basis for a charge of violation of various sections of the Criminal Code, the rule is clear that a defendant so charged may be convicted of but one crime arising out of the same conduct that may be the basis of a variety of charges. That is not the case, however, where the defendant commits two distinct, separate offenses, requiring different degrees of proof such as in the instant case. As the court has stated, the crime of burglary was completed upon the entry of one of the defendants into the premises. A separate offense was then committed where he placed a knife at her neck and thus committed the crime of armed robbery.

██ We therefore find that the trial court properly entered judgment on both the verdict of guilty as to burglary and guilty as to armed robbery. We therefore affirm.

Affirmed.

SEIDENFELD, P. J., and HALLETT, J., concur.

### SUPPLEMENTAL OPINION ON DENIAL OF PETITION FOR REHEARING

Mr. JUSTICE GUILD delivered the opinion of the court:

The defendant has petitioned this court for a rehearing praying that we reconsider that portion of our opinion wherein we held that the trial court properly entered judgments of conviction on both the verdict of guilty of burglary and the verdict of guilty of armed robbery. Citing *People v. Williams* (1975), 60 Ill.2d 1, 322 N.E.2d 819, the defendant argues that the instant offenses arose out of identical conduct and, as a result, the judgment of conviction of only the more serious of the two offenses, armed robbery, can stand. We based our holding upon our conclusion that in the instant case the offenses of burglary and armed robbery were separate offenses which justify separate judgments of conviction. We adhere to that view.

In *Williams*, the defendant and an accomplice, feigning car trouble,

gained entry into a private residence and immediately thereafter shot and killed one Mr. Calderone, who had opened his front door carrying an unloaded revolver. The defendant and his accomplice then, following a confrontation with Mrs. Calderone, and the disconnection of the telephone, pointed a gun at Mrs. Calderone and demanded to know the location of the rest of their money. She advised them of the location of her purse, and upon their return to her room, the men then bound and gagged Mrs. Calderone and then left the residence, taking money and various other items of property. The defendant was convicted of burglary, armed robbery and murder and was sentenced upon each offense. With respect to the convictions of burglary and armed robbery, the supreme court held that the unauthorized entry with the intent to commit theft and the actual theft by way of armed robbery constituted two offenses arising from the same conduct and, accordingly, reversed the judgment and sentence on the burglary conviction. With respect to the convictions of armed robbery and murder, however, the supreme court affirmed the convictions and sentences imposed therefor, "* * * even though the activity constituting both offenses was a series of very closely related acts. The purpose of the entry was robbery, not murder, and that objective changed to murder only when the robbers were confronted by Mr. Calderone with a gun in his hand. Then, they chose to commit a separate act for the purpose of killing Mr. Calderone. That shooting can be viewed as a means of removing an obstacle to their original objective of robbery, but it is also evident that at least part of their reason for killing was to avoid injury or apprehension by Mr. Calderone. We believe that such a situation is controlled by our decision in *People v. Johnson* (1970), 44 Ill.2d 463 * * *." 60 Ill.2d 1, 14, 322 N.E.2d 819, 826. A similar situation is presented in the instant case in that the placing of the knife at Mrs. Ruehle's throat upon being confronted by her was motivated, at least in part, by a desire to avoid injury or apprehension by her. The original objective of the entry changed, and the defendant, or an individual whose conduct defendant is legally accountable for, chose to commit a separate act justifying the imposition of a separate judgment of conviction.

We further note, as did the court in *People v. Siglar* (1974), 18 Ill. App.3d 381, 309 N.E.2d 710, that the "independent motivation" test used to determine whether offenses are a part of a single course of conduct during which there was no substantial change in the criminal objective is not based solely upon an analysis of a defendant's conception of his motivation. Rather, "The test must be more objective and must consist in an appraisal of all the surrounding facts to determine if the defendant's actions resulting in more than one possible charge were in fact a single course of conduct with no change in the criminal objective and with no

new elements of proof required." 18 Ill.App.3d 381, 383, 309 N.E.2d 710, 712.

Whereas the facts in *Williams* indicate that the defendant entered the Calderone residence with full knowledge that certain individuals were present and expecting to gain entry by force, the armed robbery in the instant case occurred only after a surreptitious entry was discovered by Mrs. Ruehle. An appraisal of all of the facts of the present case satisfies us that the conduct which formed the basis for the armed robbery was sufficiently separate, distinct and independently motivated from the conduct which formed the basis for the burglary to justify the imposition of separate judgments of conviction therefor.

Accordingly, the petition for rehearing is denied.

Petition denied.

SEIDENFELD, P. J., and HALLETT, J., concur.