(No. 14867.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHARLES RUDECKI *et al.* Plaintiffs in Error.

*Opinion filed June 20, 1923—Rehearing denied October 3, 1923.*

1. CRIMINAL LAW—*when participants in unlawful assembly are guilty of murder.* Where members of a particular club, some of whom are armed with dangerous weapons, call at the rooms of another organization for the ostensible purpose of starting a fight, a shot fired by one member of the visiting party is a shot fired by all, and all are guilty of a homicide resulting therefrom and may be convicted of murder whether or not there was any expectation that anyone would be killed, as each participant in an unlawful assembly is responsible for the acts of any member of the company in furthering the purpose of the assembly.

2. SAME—*when refusal of number of defendants' instructions is not ground for assignment of error.* The mere fact that many instructions were given for the prosecution and a number of the defendants' instructions were refused is not ground for assignment of error in the court's rulings on the instructions, where no objection or comment is made in the briefs in regard to the contents of any of the instructions given or refused.

3. SAME—*when malice is presumed from commission of unlawful act.* Malice is sufficiently shown when a dangerous act likely to produce death or great bodily injury is committed with reckless disregard of consequences to persons present.

4. SAME—*when court has no jurisdiction to consider motion for new trial.* After a lapse of the term at which a judgment of conviction and sentence are pronounced the trial court has no further jurisdiction of the case, and has no power to set aside its judgment or grant a new trial for newly discovered evidence or to enter any further order in the case.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOHN J. SULLIVAN, Judge, presiding.

W. J. LEWIS, and JOHN M. DUFFY, for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

John and Charles Rudecki, together with George Tesmer, James A. Schaffer, Frank Serdynski and Anton Sudil, were indicted in the criminal court of Cook county for the murder of Thomas Kominick. Serdynski and Sudil were not then arrested and only the two Rudeckis were put on trial. They were convicted and sentenced to imprisonment in the penitentiary for twenty and fourteen years, respectively, and have sued out a writ of error.

The murder was committed on Saturday night, August 21, 1920,—or, rather, in the early morning of August 22,— at the rooms of the White Eagle Club, a pleasure organization of which the deceased was a member. The defendants were members of a similar organization known as the American Jolly Boys, of which John Rudecki was president, and the murder was the result of a visit by members of the latter organization to the former. The trouble which finally resulted in the murder appears to have originated in a misunderstanding in regard to a proposed baseball game between teams composed of members of the two clubs, to be played on Saturday afternoon, August 14. Only five members of the Jolly Boys appeared at the club at the appointed time prepared to play and the game was not played. Two men came from the White Eagles to inquire the cause of the failure and were told why there could be no game,

and an apology was made. About two or three o'clock the next morning five members of the White Eagle Club called at the Jolly Boys Club and started a fight, in the course of which Anton Sudil, one of those indicted with the plaintiffs in error, was beaten and his clothes were torn. This was early Sunday morning, and that day a shotgun was brought to the Jolly Boys Club and during the week other weapons were brought there, so that by the next Saturday night there were two shotguns and two revolvers at the club. Saturday night before the murder a number of members of the Jolly Boys Club were present at the club, and it was stated that the White Eagles were coming over about midnight to finish up the job they started a week before. The defendants were all present, and John Rudecki remarked that the best thing was for somebody to go over and see if they could get the misunderstanding straightened, and Sudil said he would go over there himself but he didn't know who the president was. He said he would go over and collect for his suit, and John Rudecki said he would go along and point out Schultz, the president of the White Eagles, to Sudil, so about midnight they started to collect for Sudil's clothes. Charles Rudecki testified that after they had started Serdyn-ski said that John and Dago (a name by which Sudil was known) were going over there alone and they might get trimmed up; that "we might as well follow them up and help them out in case they got a beating." Skinny (which was the name by which Serdynski was known amongst his friends) took a shotgun and Charles Rudecki also took one, and they followed John and Dago, and Tesmer and Leo Bronder followed them. Schaffer, who was indicted with the other defendants, testified that he also followed the crowd to the White Eagle Club, and John Rudecki testi-fied that he and Sudil had stopped at a saloon about 9:30 and Sudil got a beer bottle, which he gave to Schaffer. John Rudecki testified that he had no revolver but that Sudil had one. When the party arrived at the White Eagle Club, in

response to their knock the door was opened two inches by Frank Zak, who was an officer of the club. It was after midnight. There were thirteen members of the club present, some of whom were playing pool and others were playing cards. The two men at the door asked to see the president. Zak told them that the president was asleep, but Otto Souhrada, who was a member of the club, told him to wait a minute 'and he would go and get him. The door was opened wider, and Zak, who saw a blue-steel revolver and the end of a shotgun, stepped behind the door, pulling it wide open. Shots were fired and Zak ran. John Bidas and Souhrada both testified that they saw John Rudecki shooting with a blue-steel revolver. There is some disagreement as to the number of shots fired, and, of course, there was a good deal of confusion, so that it cannot be determined absolutely how many shots were fired, who all were engaged in the shooting, or who fired the particular shot which killed the deceased. It is certain that in the fray he was shot through the body with a shotgun, the load going through his lungs, tearing away part of his heart. John Rudecki denies that he had any revolver or fired any shot. Charles Rudecki admits that he followed John and Sudil with a shotgun but denies that he fired a shot. He said that as he got to the top of the steps approaching the door of the club room he stumbled and fell; that he had his finger on the trigger and his shotgun went off.

It is immaterial who fired the particular shot by which Kominick was killed. The character of visit to the White Eagle Club by the defendants was shown by the circumstances which preceded it. Its ostensible purpose, the time of its occurrence, the fact that some of the members of the party were armed with deadly weapons, that Charles Rudecki and Serdynski followed the crowd anticipating that they might be beaten and need help, all show that the visit was a raid made on the White Eagle Club by these members of the Jolly Boys Club for the purpose of securing re-

venge for the result of the fight of the week before. It is doubtless true that there was no definite intention to kill Kominick or any other particular person, or any definite intention to commit murder, or any expectation that murder would be committed, but there was the expectation that a fight would occur and preparation to see it through, to whatever extent was necessary, to a successful issue, and weapons were taken along with the intention of using them if circumstances seemed to require it. The company was a riotous and unlawful assembly for the purpose of disturbing the public peace, and each member of it was responsible for the acts of any member of the company done in carrying out the purpose of the assembly. A shot fired by one member of the mob was a shot fired by all of them, and all of them must answer for the result. If the plaintiffs in error and their co-defendants had a common design to do an unlawful act, then in contemplation of law whatever act any one of them did in furtherance of the original design is the act of all, and all are equally guilty of whatever crime was committed. *Hanna* v. *People,* 86 Ill. 243; *Brennan* v. *People,* 15 id. 511.

It is unnecessary, and would be unprofitable, to enter upon a particular discussion of the testimony of the various witnesses. While there is some contradiction in details, the combined effect of the testimony clearly establishes the facts which have been narrated. The credibility of the witnesses as to particular facts and the conclusion to be drawn from the whole evidence was for the determination of the jury, and the evidence, even taking into consideration and giving credit to the testimony of the defendants, was ample to sustain the verdict of guilty.

George Tesmer, who was indicted with the plaintiffs in error but was not tried, testified on the trial and also made a statement to the police, which was reduced to writing and signed by him and also by the plaintiffs in error and was read in evidence without objection. It is now argued that

309—9

this confession was secured from Tesmer by offers of immunity and extorted from the plaintiffs in error by threats and physical abuse, beating, kicks and violence. These objections not having been made on the trial cannot receive consideration here, but the evidence contained in the bill of exceptions in regard to the manner in which the confession was obtained is insufficient to require its rejection. The evidence tending to impeach it by reason of the means by which it was procured is the testimony of John Rudecki, which is contradicted both by the testimony of the witnesses who were present and by the circumstances under which the confession was clearly shown to have been made.

The plaintiffs in error in their brief call attention to the fact that twenty-two instructions were given at the request of the prosecution over the objection of the defendants and seventeen were given without objection, while twenty-two of the instructions offered by the defendants were refused. Nothing is said about the contents of any one of the instructions given or refused. The mere fact that many instructions were given for the prosecution and a number were refused for the defense is no evidence that any error was committed by the court in its rulings on the instructions.

It is argued that no witness testified to any malice, but all agree that the visits to the White Eagle Club were to collect money, that therefore there should have been no conviction for murder, and that mere presence, without consent or assistance in the commission of a crime, does not constitute guilt on the part of the accused. Malice is sufficiently shown when a dangerous act likely to produce death or great bodily injury is committed with reckless disregard of consequences to persons present. While the mere presence of a spectator who happens to witness a crime is no evidence of his guilty connection with it, yet when he has accompanied the perpetrator of the crime for the purpose of assisting in the commission of an unlawful act in the course of which the crime has been committed, the person

who is so present for the purpose of assisting in the commission of the unlawful act is guilty of the crime committed in its perpetration although he had no desire or intention that such crime should be committed and took no part in the actual commission. *Brennan* v. *People, supra.*

After their conviction the plaintiffs in error were committed to the penitentiary, where they have been confined since April 21, 1921. After the murder Serdynski went to Boston and enlisted in the army. He was discharged in September, 1921. Upon his discharge he went to the State's attorney and made a confession of his guilt, and he and Sudil were afterwards tried and convicted and are now serving sentences of imprisonment in the penitentiary for this murder. In September, 1922, the plaintiffs in error made a motion for a new trial on the grounds of error in the admission of evidence and the giving and refusing of instructions and of the insufficiency of the evidence, all of which were included in their motion made before their sentence, and on the further ground of newly discovered evidence, consisting of the confession by Serdynski. This motion the court denied, because after the lapse of the term at which the plaintiffs in error were convicted it had no more jurisdiction of the case and no power to set aside its judgment or grant a new trial. It is a fundamental rule that where a court has rendered final judgment in a cause, it has no longer jurisdiction, after the expiration of the term, to change the judgment or to enter any further order in the case. It may be remarked that the confession of Serdynski that he fired the fatal shot would not necessarily result in the acquittal of the plaintiffs in error.

The judgment is affirmed.                *Judgment affirmed.*