310

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN GREY *et al.,* Defendants-Appellants.

(Nos. 58202, 58203 cons.; ▮▮▮▮▮▮▮▮▮▮

First District (5th Division)—August 17, 1973.

James J. Doherty, Public Defender, of Chicago, (Bradley Harris and Lee Hettinger, Assistant Public Defenders, of counsel,) for appellants.

Bernard Carey, State's Attorney, of Chicago, (Kenneth L. Gillis and Sharon Grossman, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

OFFENSES CHARGED

Aggravated assault.[1] (Ill. Rev. Stat. 1971, ch. 38, par. 12—2(a)(1).) (Andrews and Grey.) Criminal damage to property. (Ill. Rev. Stat. 1971, ch. 38, par. 21—1(a).) (Grey.)

JUDGMENT

After a trial without a jury, defendant Grey was found guilty of both charges and admitted to one year's probation, with the first four months to be spent in the city jail. Defendant Andrews was also found guilty and was sentenced to one year in the Illinois State Farm.[2]

CONTENTIONS RAISED ON APPEAL

1. The complaint charging defendant Grey with aggravated assault was fatally defective.

2. Defendant Grey was not proved guilty beyond a resonable doubt of either charge.

3. Defendant Andrews was not proved guilty beyond a reasonable doubt.

EVIDENCE

Edward Novak, Jr., for the State:

He lived at 2218 N. Sawyer in Chicago. At about 10:30 P.M., on July 11, 1972, he went to the front porch of his home. David McGath and John Grey were there. The witness told McGath he didn't want any trouble and told McGath to go back across the street. He went back into the house and then saw McGath break the front window. He ran out to the porch and saw McGath breaking more windows with a sawed-off cue stick, and saw Grey about five feet away on the stairway. He pulled McGath away and Grey came toward him with a baseball bat. He pulled both of them down but ran back inside when three other people came from across the street. Then he heard someone kicking in the two front doors. The door flew open and McGath fired a shot from a hand gun which went over the witness' left shoulder. He kicked the door shut and then saw an arm come through the window and fire a shot at his mother.

---

[1] "Assault (a). A person commits an assault when, without lawful authority, he engages in conduct which places another in reasonable apprehension of receiving a battery.

Aggravated assault (a). A person commits an aggravated assault when, in committing an assault, he:

(1) Uses a deadly weapon; * * *."

[2] In case No. 58202, David McGath, a defendant originally tried with defendants herein, filed a separate appeal and his conviction was affirmed by this court May 11, 1973.

He grabbed a knife from the kitchen, ran to the front porch, and saw a policeman standing there. He had seen McGath and Grey four or five times prior to the incident. He told the police Grey had been involved.

*Josephine Novak*, for the State:

On July 11, 1972, at approximately 10:30 P.M., she heard voices on her front porch, went outside, and saw McGath and Mrs. Andrews exchanging words with her son. She asked them to drop the baseball bats and go back across the street, and told them she was going inside to call the police. She got as far as the kitchen, heard windows breaking, and then saw McGath kick the door open and fire a shot toward the interior of the house. Then she saw Bernard Andrews' arm come through the window. He was holding a gun and fired a shot at her. She had seen Andrews at least 20 times before. After the shot was fired, she fainted. She did not see Grey on the front porch but saw him running from the police later. He had blood on his shirt. She saw the entire upper portion of Andrews' body as he fired through the window. He was wearing a white, sleeveless T-shirt.

*Danny Novak*, for the State:

He lived with his family at 2218 N. Sawyer in Chicago. At about 10:30 P.M. on July 11, 1972, he was in the front room of the home with his mother, Josephine, and brother, Edward, when he saw the front door kicked open by Dave McGath who lifted a revolver toward his mother. His brother forced the door shut and then an arm came through the window and fired another shot.

*Edward Novak, Sr.*, for the State:

On July 11, 1972, at about 10:30 P.M., he was sitting in the kitchen of his home at 2218 N. Sawyer with his two grandsons, his son, daughter, and daughter-in-law. All of a sudden, the front windows went out. He called the police and then went to the front room where someone was breaking down the two front doors. Then the door went open and someone fired a shot at his son. Then someone fired a shot through the window at his wife. His house was damaged in the amount of $503.

*James Hogan*, for the State:

At the time of the incident, he was a Chicago police officer assigned to the 14th District. On July 11, 1972, he was called to 2218 N. Sawyer. When he arrived at about 10:30 P.M., he observed people milling around and saw that all the windows on the first floor had been broken out, the front door was kicked in, and there was a bullet hole in the dining-room wall. John Grey was placed under arrest after being identified by Edward Novak, Jr.

*John Grey*, on his own behalf:

He had been to a carnival the night in question, and on his way back

with his girl friend they fell off a bike and his hand was bleeding. When he got to the house across the street from 2218 N. Sawyer, a police officer came up to him with a flashlight. Edward Novak, Jr., was with the police officer and said he (the witness) was not the man. He was not placed in custody. He went to the house across the street to clean the blood off his hand, and a short time later some police officers arrived and took him outside to be identified. Edward Novak, Jr., then said he could identify him by the shoes he was wearing. He was then taken into custody. He hadn't seen McGath on that date and wasn't on the Novaks' porch.

*Mary Jane Pender,* for the defense:

She was defendant Bernard Andrews' sister and corroborated Grey's testimony.

*Kay Leech,* for the defense:

She was Grey's girl friend and corroborated his testimony.

*Bernard Andrews,* on his own behalf:

He lived at 2223 N. Sawyer, the same house Mary Jane Pender lives in, across the street from 2218. He was fishing with his aunt and uncle at Montrose Harbor on July 11, 1972. When he returned home that evening, his mother told him to come inside because there was trouble across the street. He didn't fire a gun and he didn't break any windows or break down any doors that evening.

*Mildred Orley,* for the defense:

She is a friend of Andrews' uncle. She accompanied Andrews fishing at Montrose Harbor and then took him to her house for the evening. She brought him home the next morning.

*Alice Andrews,* for the defense:

She was Bernard Andrews' mother. Her son left the house to go fishing on the morning of July 11, 1972, and didn't return until the following morning.

*David McGath,* on his own behalf:

He was at home with his mother on July 11, 1972, watching TV. He did not go to the Novaks' house that evening.

*Joy McGath,* for the defense:

She was David McGath's sister and was with him at his sick mother's house all day and evening of July 11, 1972.

*Daniel Blonski,* for the State:

He saw defendant Grey at 2218 N. Sawyer at about 10:30 P.M., July 11, breaking a window with a baseball bat.

*OPINION*

First, defendant Grey asserts that the complaint charging him with aggravated assault is fatally defective because it fails to name any of the alleged victims of the assault.

■■ The first line under the heading of the complaint contains the typed name of "Edward Novak, Sr., complainant," and in the body of the complaint John Grey is charged with firing a weapon "in the vicinity of said victim and his family * * * on July 11, 1972 at 2218 N. Sawyer." At the bottom of the complaint it is signed in two places by Edward Novak, Sr. When read as a whole, the complaint leaves no doubt that Edward Novak, Sr., was alleged to have been a victim, and the facts recited indicate that he was "placed in reasonable apprehension of receiving a battery" when defendant Grey, accompanied by two other boys, fired a revolver shot in the vicinity of "said victim and his family" at 2218 N. Sawyer. (See People v. Williams, 37 Ill.2d 521, 229 N.E.2d 495, cert. denied, 390 U.S. 948.) Thus, we perceive no danger that defendant could face a second prosecution for this offense, particularly since the report of proceedings would be available to him in the event of the necessity of a double jeopardy defense.

Next, defendant Grey alleges that the State failed to prove him guilty of either aggravated assault or criminal damage to property beyond a reasonable doubt. He asserts that he himself was not shown to have fired a gun, nor struck anyone with the baseball bat, nor broken any windows. In fact, it is suggested that when Grey approached Novak with the baseball bat, he intended to separate Novak and McGath who were then fighting. The court and other witnesses obviously thought otherwise.

Edward Novak, Jr., testified that McGath and Grey were together on his front porch. He saw McGath breaking windows and saw Grey standing a short distance away holding a baseball bat. When he pulled McGath away from the windows, Grey came at him with the bat and Novak pulled both of them down, but Grey then fled when three others approached from across the street. Mrs. Novak didn't see Grey on the porch but saw him fleeing from the police sometime later. Daniel Blonski testified that he saw Grey breaking windows with a baseball bat.

■■ While it is true, as defendant asserts, that mere presence at the alleged offense is insufficient to make one a principal to a crime, in the present case we believe the trial court correctly found that, when considering all the circumstances of this incident, defendant Grey was far more than a passive observer at the scene. (See People v. Clark, 30 Ill.2d 67, 195 N.E.2d 157.) His involvement in the window breaking was clearly presented by witnesses whom the trial court found credible. Although it was not shown that he fired one of the guns, his active association with those who did fire the shots renders him accountable for their acts. (Ill. Rev. Stat. 1971, ch. 38, pars. 5—1 and 5—2.) The act of one member of a group who fires a shot becomes the act of all and all must answer for the result. (People v. Rudecki, 309 Ill. 125, 129, 140 N.E. 832.)

This is so even if the acts were not the result of a preconceived plan but arose spontaneously from the group with which defendant had become associated. *People v. Richardson*, 32 Ill.2d 472, 476, 207 N.E.2d 478.

We believe the State has presented sufficient evidence to demonstrate the Grey's ties with McGath and Andrews were close enough to render him a principal in the two offenses charged and was sufficient to prove his guilt beyond a reasonable doubt. See *People v. Bracey*, 110 Ill.App.2d 329, 249 N.E.2d 224.

Next, Andrews maintains that he was not proved guilty of aggravated battery beyond a reasonable doubt because the only identifying witness, Mrs. Novak, was not credible. He contends that Mrs. Novak did not have ample opportunity to observe him through the window and was hysterical after the incident.

Andrews and the Novak family were neighbors; he lived at 2223 N. Sawyer, across the street from the Novaks' house which was the scene of the incident. Mrs. Novak testified that she had seen this defendant at least 20 times before she saw him in the window firing a shot at her. She saw the entire upper portion of his body as he fired through the window. She identified him as wearing a white, sleeveless T-shirt.

■■ Where the testimony of one witness is positive, it may be sufficient to prove guilt beyond a reasonable doubt. (*People v. Miller*, 2 Ill.App.3d 206, 211, 276 N.E.2d 395.) In the present case, Mrs. Novak's testimony was not impeached and, when coupled with the fact that defendant lived across the street and was known to the witness prior to the incident, we find her testimony sufficiently clear and credible to identify defendant as the person who fired one of the shots.

From a consideration of all of the evidence, we find it adequate to support defendant's guilt beyond a reasonable doubt.

Affirmed.

DRUCKER, P. J., and LORENZ, J., concur.