(No. 47312.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. MARY A. TATE *et al.*—(Willie Bryant, Appellant.)

*Opinion filed March 29, 1976.*

Edward M. Genson, Theodore M. Becker, Morton E. Friedman, and Sam F. Adam, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel and Jayne A. Carr, Assistant Attorneys General, of Chicago, and Laurence J. Bolon, Linda Ann Miller, and Joan S. Cherry, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE RYAN delivered the opinion of the court:

Mary Alice Tate (Mary Alice) and Willie Bryant (Bryant) were found guilty by a jury in the circuit court of Cook County of the murders of Othas Jameson and Freddie Tate. The appellate court affirmed their convictions (25 Ill. App. 3d 411), and we granted Bryant's petition for leave to appeal under Rule 315 (50 Ill.2d R. 315). Mary Alice has not appealed to this court.

In the afternoon on February 29, 1970, Mary Alice and Bryant found their 14-year-old daughter, Sabrina, intoxicated and ill. She told her parents that she had been given whiskey and marijuana by various persons, including the decedents, who lived in a small building at the rear of the building occupied by Mary Alice, Bryant, and several others. Following a confrontation the details of which will be given later, Bryant started fighting with Ernest Jameson, and Mary Alice shot Othas Jameson and Freddie Tate. Both later died from these wounds.

Bryant argues that since he did not shoot anyone, his "mere giving of a gun to another person who uses the gun to shoot and kill the victim" does not make him accountable for the murders. We feel that the jury could

justifiably have found several additional culpable acts, beyond that of merely giving a gun to Mary Alice, which supply the requirements for conviction on an accountability theory. Consequently, we affirm appellant's conviction.

The jury was instructed on the issue of accountability:

"A person is responsible for the conduct of another person when, either before or during the commission of a crime, and with the intent to promote or facilitate the commission of a crime, he knowingly solicits, aids, abets, agrees or attempts to aid the other person in the planning or commission of the crime."

This instruction incorporates the essentials of section 5—2 of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 5—2).

Although the evidence at trial was contradictory, the jury, after hearing the testimony and weighing the credibility of witnesses, resolved the issues against appellant. While it is true that mere presence or negative acquiescence is not enough to constitute a person a principal, we feel that the circumstances are such as to show a common design assented to by the appellant. The determination of the jury will not be set aside unless the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *People v. McClindon* (1973), 54 Ill.2d 546.

Various witnesses testified concerning the confrontation between the defendants and the decedents. Without recapping the testimony in detail, it is a fair summary to say that the defendants were rather upset by the intoxication of their daughter and with the fact that she had become violently ill. They went to the rear house to demand an explanation and ordered the decedents and others to leave. The decedents denied that they had made the daughter drunk and rebuffed the demand that they leave. Mary Alice and appellant left, but despite the hostile atmosphere and the apparent potential for violence stated

that they were going to come back.

After Mary Alice and appellant had returned to their own home, Mattie Pearl Tate saw Bryant standing in his kitchen with a gun in one hand and bullets in the other. She testified that Bryant initiated a conversation with Mary Alice about returning to the other house and that he urged Mary Alice to accompany him. She agreed to do so but stated that she did not want to go "barehanded." Then, according to Mattie Pearl Tate, Bryant went back to the kitchen and got another gun which he gave to Mary Alice.

According to Ernest Jameson, when Bryant and Mary Alice returned, Bryant pushed Joe Lewis Tate and ordered him to leave. Bryant then pushed Ernest Jameson several times, and started to take his hand from his pocket, revealing a gun. It was while Jameson and Bryant were wrestling for the gun that Mary Alice shot the decedents.

The jury may draw inferences from the conduct of the defendant. (*People v. McClindon* (1973), 54 Ill.2d 546.) Also, "proof of a common purpose need not be supported by words of agreement but can be drawn from the circumstances surrounding the commission of an act by a group" (*People v. Richardson* (1965), 32 Ill.2d 472, 476), and "circumstances may show there is a common design to do an unlawful act to which all assent" (*People v. Washington* (1962), 26 Ill.2d 207, 209).

In many ways, this case is similar to the cases involving conflicts between street gangs or informal youth groups. There, as in the case at bar, there are acts by two or more people indicating their knowledge of a hostile and potentially dangerous situation, with one or more persons voluntarily taking up arms in anticipation of violence, and the actual violence resulting in death.

In *People v. Hughes* (1962), 26 Ill.2d 114, the defendant was one of six teenagers, all members of a group called the "Vice Lords," who decided to try to find members of a rival club called the "Imperial Chaplains," a

group with which they were having some difficulty. It appeared that one of their members had recently been beaten by members of the Imperial Chaplains. One of the Vice Lords armed himself with a sawed-off rifle, apparently in preparation for the confrontation. A short while later, three shots were fired at two men in an alley and one man was fatally wounded. The evidence was in conflict as to which of the six teenagers had possession of the weapon and who fired it. This court, in upholding defendant's conviction, indicated that such specific evidence was not necessary to prove defendant's guilt. The court said:

> "Where one attaches himself to a group bent on illegal acts which are dangerous or homicidal in character, or which will probably or necessarily require the use of force and violence that could result in the taking of life unlawfully, he becomes criminally liable for any wrongdoings committed by other members of the group in furtherance of the common purpose, or as a natural or probable consequence thereof, even though he did not actively participate in the overt act itself." 26 Ill.2d 114, 119-20.

The court stressed the preparatory conduct of the defendant and the nature of the surrounding circumstances, and stated:

> "Having thus embarked upon a course of action which was dangerous in character and could reasonably be expected to require the use of force that might result in the death of a human being, a mood of violence was thereby created which rendered each passer-by a potential victim and each participant a potential murderer." 26 Ill.2d 114, 120.

While it was not shown that Hughes had been the one to fire the fatal shot, the court believed that "it was proved beyond a reasonable doubt that [he] had subscribed to an

unlawful venture which, as a natural consequence, resulted in the death" of decedent. 26 Ill.2d 114, 121.

In *People v. Rudecki* (1923), 309 Ill. 125, members of the American Jolly Boys had had some disagreement with members of the White Eagle Club over a baseball game. Later, one of the Jolly Boys, Anton Sudil, was beaten and his clothes were torn by members of the White Eagle Club. Defendant and Sudil decided to go to the clubhouse of the White Eagles to collect for damages to Sudil's clothes. Others of the Jolly Boys decided to go along to " 'help them out in case they got a beating' " (309 Ill. 125, 127), and various weapons, including a shotgun, revolver, and a beer bottle, were taken along. During the ensuing confrontation, Thomas Kominick was killed by a shotgun blast. The court, in upholding defendant's conviction, decided that: "It is immaterial who fired the particular shot by which Kominick was killed. The character of visit to the White Eagle Club by the defendants was shown by the circumstances which preceded it." (309 Ill. 125, 128.) The court went on to say:

> "It is doubtless true that there was no definite intention to kill Kominick or any other particular person, or any definite intention to commit murder, or any expectation that murder would be committed, but there was the expectation that a fight would occur and preparation to see it through, to whatever extent was necessary, to a successful issue, and weapons were taken along with the intention of using them if circumstances seemed to require it." 309 Ill. 125, 129.

In our case, the jury could have found from the evidence that Bryant, knowing that many of the occupants of the rear house were intoxicated and were hostile to him, encouraged Mary Alice to return to the rear house with him, and armed both himself and Mary Alice with loaded pistols; that, once inside the rear house, he acted in an aggressive and demanding manner, escalating the con-

frontation and precipitating the shooting.

In the language of *Hughes,* the jury could have found that defendant had "embarked upon a course of action which was dangerous in character and could reasonably be expected to require the use of force that might result in the death of a human being." (26 Ill.2d 114, 120.) Or in the language of *Rudecki,* "there was the expectation that a fight would occur and preparation to see it through *** to a successful issue, and weapons were taken along with the intention of using them if circumstances seemed to require it." (309 Ill. 125, 129.) In any event, the jury's determination that Bryant was accountable for the murders of Othas Jameson and Freddie Tate was legally permissible and was justified by credible evidence.

In his brief defendant also argued that the State withheld exculpatory information found in the grand jury testimony of Sabrina Tate, in violation of *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, and Supreme Court Rule 412(c). Sabrina Tate testified for the defendant. Further, during her cross-examination defense counsel was furnished with a copy of the testimony she gave before the grand jury. Under these circumstances, the holding of *Brady v. Maryland* was not violated and the defendant has not been prejudiced by the failure of the State to furnish to defendant Sabrina Tate's grand jury testimony prior to trial.

For the reasons stated above, the judgment of the appellate court is affirmed.

*Judgment affirmed.*