THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLEOTHA WHITE, Defendant-Appellant.

(No. 69-66;

Third District—November 19, 1970.

John L. Barton, of Defender Project, of Ottawa, for Appellant.

Harry D. Leinenweber, Assistant State's Attorney, of Joliet, for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Cleotha White, the defendant, was indicted for attempted murder. Prior to the trial in the cause he was given a competency hearing before the trial judge. Defense counsel had waived a jury on behalf of defendant as to the competency hearing. Defendant was found competent and later tried by a jury on the attempted murder charge. He was found guilty of attempted murder and was sentenced.

The record in this cause discloses that defendant testified that he left his work at a shoe shine parlor on February 21, 1968, at about 8:30 P.M. He stated he drank two bottles of beer at the Legion Bar, over a two-hour period, and then he went to Boss City Bar where he also drank two bottles of beer, over a two-hour period. Following this period in the Boss City Bar, defendant left his place at the bar to go to the washroom. He left a glass and a bottle of beer at his place at the bar and both were about half full. When he returned from the washroom, after about five minutes, someone was sitting in his place and the man refused to move. Defendant then took his beer and moved elsewhere. After defendant drank his beer he left the Boss City Bar. He stated that as he walked outside he "blacked out" and "everything turned red". Defendant said that the next thing he remembers, it was the next morning and he was home.

Testimony of other witnesses including the victims of the attempted murder, indicated that defendant entered Page's Restaurant around 12:30 to 1:00 A.M. on the morning of February 22, 1968. It was stated that defendant sat at the counter for about five minutes and then walked over to the booth where Richard Alexander and Vernon Harris were seated. De-

fendant then drew a gun and shot Alexander twice in the right shoulder. As the defendant stepped back, Alexander ran out of the restaurant with defendant chasing him. Defendant again shot Alexander in the back. Defendant then returned to the restaurant and shot Harris, who was lying on the floor in an intoxicated condition. Following the shootings, the defendant fled.

Defendant testified that he remembers waking up on the morning of February 22, 1968, at his home and that his knee was bloody and his pants were torn. He started for work and was arrested. When his bloody knee was observed, defendant was taken to a hospital where he refused to allow the doctors to put stitches in his knee. Defendant also testified that he asked several times for a blood test at the hospital, as he was slobbering at the mouth when he woke up on the morning of February 22. He asserted that he wanted a blood test as "I feel I had been drugged". Various doctors and nurses who were with defendant in the hospital testified that they did not hear defendant make any requests at the hospital for a blood test.

Dr. Ciatteo, a psychiatrist who was hired by the defendant, had a one or two hour conversation with defendant on March 11, 1968. Two court-appointed psychiatrists filed reports with the court prior to the competency hearing, and both psychiatrists stated that defendant was able to know the charge against him and would cooperate with his attorney. A competency hearing was requested by defendant, and on the day of the hearing the attorney for defendant attempted to withdraw his motion for a competency hearing, but the prosecution objected and the court set a date for the hearing. At this preliminary setting the judge asked defendant if he wished a jury to consider the matter. Defendant's attorney requested a five minute recess during which time he conversed in the courtroom with defendant. Following the recess, defendant's attorney stated, "We are prepared to waive our right to a hearing by way of a jury, Your Honor." The competency hearing was held later on May 2, 1968, before the judge, who found the defendant competent to stand trial.

At the trial which was held in August, 1968, the only evidence presented by defendant consisted of his own testimony to which we have referred. As rebuttal evidence, the prosecution called defendant's psychiatrist, Dr. Ciatteo, to testify. He testified that he examined defendant on March 11, 1968, for at least an hour but not over two hours, during which time he discussed with defendant his activities on February 21 and 22, 1968. The prosecutor then read the definition of insanity from the Illinois Statute and asked Dr. Ciatteo, based on his conversation with defendant, his years of experience in the field of psychiatry, and upon a reasonable degree of medical certainty, whether or not in his opinion de-

fendant was insame on the morning of February 22, 1968. The witness answered, "According to the definition in the statutes and the other stipulations which the State's Attorney had made, he was not insane." On cross-examination, the doctor stated that, with particular type of personality of defendant, "alcohol would weaken his ordinary controls," but not to where he would be insame under the legal definition. When Dr. Ciatteo was asked about the term "pathological intoxication", the doctor stated that the term denotes a person who even with small amounts of alcoholic beverages behaves in a very irrational manner. He stated that such person overreacts to the stimulation of the alcohol in his nervous system and would do things he would ordinarily not do when sober; that some of these things are quite emotional outbursts; and sometimes, acts of a very violent nature. The doctor also stated that it would take years to acertain if a person was suffering from pathological intoxication, and that amnesia could occur along with pathological intoxication. The doctor further stated that although he tried, he was unable to elicit from the defendant enough details to determine whether he was so intoxicated as to negate the existence of the mental state of intent. The doctor also indicated that he did not believe that defendant suffered amnesia because he was able to give him some details as to what happened in Page's Restaurant in the early morning of February 22, 1968, and that some of these details could only be the product of his own thinking.

On appeal in this Court, defendant contends that it was error for the court to allow the testimony of Dr. Ciatteo; that it was error to refuse to instruct the jury as to defense of drugged condition and involuntary intoxication; that it was error to refuse to give defendant's instruction as to non-discrimination because defendant was black; and that it was also error for the trial judge to accept the waiver of jury by defendant's attorney at the competency hearing, without the judge personally questioning the defendant himself as to this matter.

■■■ With respect to the question involving the testimony of Dr. Ciatteo, it is shown by the record that there was no objection made to any of his testimony. When a defendant fails to make an objection during the trial, he cannot urge this as error for the first time on appeal. (*People v. Trefonas*, 9 Ill.2d 92, 98). As pointed out in the *Trefonas* case, an objection signifies that there is an issue of law and gives notice of the terms of the issue. Unless an objection to admission of evidence is made at that time it is regarded as waived. The court also pointed out that a party cannot sit by and permit evidence to be introduced without objection and then upon appeal raise an objection which might have been obviated if made at the trial. The reason for the rule is apparent. If an objection was made in timely fashion in the instant case, the prosecutor could have asked addi-

tional questions to cure any defect defendant now complains about on his appeal. It was apparent from the record that the background material relating to Dr. Ciatteo's testimony was not gone into in detail because Dr. Ciatteo was the psychiatrist actually hired by defendant. We, therefore, find that there was no reversible error in allowing the testimony of Dr. Ciatteo in view of the failure to object at the time of trial. *People v. Luckey,* 42 Ill.2d 115.

■■ Even assuming that an objection had been made to the line of questioning, the allowance of the testimony was proper in this cause. The doctor indicated that he examined defendant for one or two hours as heretofore stated. The opinion of the medical expert as to sanity in this cause was obviously proper. *People v. DePompeis,* 410 Ill. 587.

■■ On the issue of whether the trial court erred in refusing to instruct the jury as to the defense of a drugged condition and involuntary intoxication, we recognize that a party is entitled to have the jury instructed as to the law applicable to the facts which are shown in evidence. In the cause before us, however, the question was whether there was any evidence in the record with regard to involuntary intoxication or drugged condition. The only evidence which was presented was the request for a blood test, which defendant stated he made, or the testimony of defendant that he left a glass of beer for about five minutes at the bar. We do not believe that this constituted sufficient evidence that defendant was drugged. It would not justify an instruction as to a drugged condition as contended for by defendant. There was also no evidence which would justify an instruction with respect to involuntary intoxication in the record. Since the record does not disclose a particular set of facts which would justify such instruction, there was no error in its refusal. *People v. Reynolds,* 27 Ill.2d 523 (where there was lack of evidence on intoxication); *People v. Pugh,* 409 Ill. 584 (insanity).

■■ Defendant contends that the trial court refused to give his Instruction No. 3 which was to the effect that it was the duty of the jurors to consider the case without bias or prejudice against defendant by reason of race or color. The instruction also stated that the law is the same for defendant as it is for any other person irrespective of color or race. An instruction was actually given in this case which is I.P.I. 1.01 stating, "It is your duty to determine the facts, and to determine them only from the evidence in this case. You are to apply the law to the facts and in this way decide the case. Neither sympathy nor prejudice should influence you. You should not be influenced by any person's race, color, religion, or national ancestry". We believe that the instruction adequately instructed the jury on the issue raised by defendant. It is not necessary for the court to

give two instructions covering the same problem of possible prejudice. *People v. Moses,* 11 Ill.2d 84, 89.

■■ The final issue for consideration is whether the trial judge erred in accepting waiver of a jury by defendant's attorney at the competency hearing, without personally questioning defendant himself as to this waiver. The right to a trial by jury is guaranteed by the Federal Constitution and the Illinois Constitution, but does not mean that the defendant is guaranteed a trial by jury at a competency hearing. (*People v. Brown,* 43 Ill.2d 79, 81.) In the cause before us, defendant effectively waived his right to a jury trial for the competency hearing. The trial court in the cause before us, after denying defendant's attorney's motion to withdraw his motion as to the competency hearing, clearly stated that he was going to call for a hearing on the issue of competency, and asked whether or not the defendant wanted a jury to consider the matter. Defendant's attorney requested a five minute recess and talked to his client, after which he announced that defendant was waiving the right to a hearing by a jury. As stated in the recent Illinois Supreme Court Case of *People v. Sailor,* 43 Ill.2d 256, 253 N.E.2d 397, the record reveals in this cause that defendant's counsel in defendant's presence and without objection on his part expressly advised the court that he was waiving a jury. In the *Sailor* case the court pointed out that a defendant speaks and acts ordinarily through his attorney, who stands in the role of his agent, and when a defendant permits his attorney in his presence and without ojection to waive right to a jury trial, he is deemed to have acquiesced in it.

■ If this rule, announced in the *Sailor* case, is applicable to a situation where there is waiver of trial by jury of the criminal charge, certainly a waiver of jury can be made by counsel, in the presence of a defendant, as to competency hearing such as we have in the instant case. It was, therefore, not erroneous for the court to accept the waiver of jury trial by the attorney announced in open court in the presence of defendant.

Since we find no reversible error in the record, the judgment of the Circuit Court of Will County will be affirmed.

Judgment affirmed.

RYAN, P. J., and STOUDER, J., concur.