THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JULIUS ANDERSON, Defendant-Appellant.

First District (2nd Division)    No. 79-2204

Opinion filed February 10, 1981.

James J. Doherty, Public Defender, of Chicago (John E. Horn, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Defendant, Julius Anderson, was charged by indictment with burglary, armed robbery, rape and deviate sexual assault. (Ill. Rev. Stat. 1975, ch. 38, pars. 19—1, 18—2, 11—1, 11—3.) Anderson entered a plea of not guilty by reason of insanity. In a jury trial he was found guilty of all charges. Defendant was sentenced to serve seven years for burglary, 30 years for armed robbery, 35 years for rape and 40 years for deviate sexual assault, all sentences to run concurrently. From those judgments and sentences defendant appeals, presenting the following issues for review: (1) whether the prosecution's cross-examination of defense experts in terms of "sanity" and "insanity" constituted prejudicial error; (2) whether the trial court erred in allowing the prosecution to cross-examine a defense expert on the basis of a study (the "Rosenham Report") where the authoritativeness of the study, which indicated the symptoms of

psychosis could be feigned, was never established; (3) whether the trial court should have instructed the jury to disregard the prosecution's suggestion that defendant could have read the Rosenham study at college where no evidence was ever presented to the jury that defendant had attended college; (4) whether the trial court on its own motion should have instructed the jury as to what mental states are necessary to commit the crimes of armed robbery, rape and deviate sexual assault; and (5) whether the sentences imposed should be vacated and the cause remanded for a new sentencing hearing where defendant was not advised of his right to be sentenced under the law as it existed at the time the offenses were committed.

For the reasons hereinafter set forth the judgments of defendant's convictions are affirmed, the sentences imposed thereon are vacated and the cause is remanded for a new sentencing hearing.

At trial defendant raised the defense of insanity. On appeal he does not question the legal sufficiency of the evidence the State elicited to prove his sanity but argues that the judgments and sentences must be reversed on other grounds. Because neither the facts of these crimes nor the sanity of defendant at the time he committed them is now in dispute, a detailed recitation of the evidence is unnecessary. What follows is a brief summary of the evidence.

On May 11, 1977, at approximately 3:15 p.m., defendant surprised the victim when she was alone in her apartment on the north side of Chicago. At gunpoint defendant robbed the victim, then bound her hands behind her back with nylon stockings. After defendant discovered that the victim's roommate had a few hundred dollars in a bank account, defendant told her that they would wait until the roommate came home from work, then all three of them would drive to the bank where the roommate would withdraw her funds. While they were waiting, defendant, placing the loaded revolver to the victim's temple and threatening to "blow her brains out," forced the victim to submit to acts of anal and sexual intercourse. Defendant put on one of the victim's sweaters, then went into her roommate's closet and removed a pair of blue jeans. Concerned that the victim's roommate might not be so easily subdued, defendant decided to leave before she returned from work. He placed the victim in the hall closet, blocking it with a desk, rummaged around in the apartment for a few minutes, then left. The victim escaped and ran to another apartment for help. Later that day a physician at St. Francis Hospital in Evanston found evidence of spermatazoa in her vaginal area.

The following afternoon (May 12) defendant was arrested by the Evanston police who had spotted a handgun in his waistband and had observed him wearing the sweater and jeans he had removed from the apartment. A search of defendant yielded other property taken in the

robbery. Defendant was thereafter identified in a lineup and his fingerprints were matched to those developed at the scene.

In support of his insanity defense defendant presented testimony from five psychiatrists, two registered psychologists and two laymen. The psychiatrists, Drs. Prabeep Rattan, Paul Cherian, Thomas Catteo, Edward J. Kelleher and Jerome Katz, and the psychologists, Drs. Edward Blumstein and Paul Kennedy, all testified that defendant was suffering from schizophrenia. Only Dr. Katz, however, expressed the opinion that on the date of the offenses, May 11, 1977, defendant was not able to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. Dr. Katz did not include this conclusion in either of his written examination reports because he "overlooked" it. The other defense experts either expressed no opinion as to defendant's sanity or stated that defendant's mental illness did not prevent him from appreciating the criminality of his conduct and from conforming his conduct to the requirements of the law. These witnesses also expressed the belief that defendant had tried to manipulate their psychiatric interviews by feigning various symptoms characteristic of schizophrenia.

Defendant's former parole officer, Leon Johnson, testified that defendant was mentally ill but knew the difference between right and wrong and was able to conform his conduct to the requirements of the law and to appreciate the criminality of his conduct. Dwight Woodruff, a Cook County deputy sheriff, testified regarding what he believed was a suicide attempt by defendant when he set his locked cell on fire in December 1977.

In rebuttal the State called Dr. Frank M. Lorimer, a board certified psychiatrist on the staff of the Psychiatric Institute of the Circuit Court, Michael Jettner, the arresting officer, and Ferdinand Minelli, an assistant state's attorney who was present at defendant's lineup. Dr. Lorimer, who interviewed defendant on six different occasions both before and after the date of the offenses, diagnosed defendant's illness as paranoid schizophrenia in remission, in a personality disorder, antisocial. He believed defendant was a malingerer and said defendant had attempted to manipulate the interviews. Applying the legal definition of insanity, Dr. Lorimer expressed the opinion that defendant was sane on May 27, 1977, 16 days after the offense. Officer Jettner and Mr. Minelli testified regarding defendant's post-arrest behavior. The jury returned verdicts of guilty on all charges, and sentences were imposed as heretofore indicated.

## I

Defendant's first assignment of error on appeal is that the trial court abused its discretion in allowing the State to cross-examine defense experts in terms of "sanity" and "insanity." The State responds, initially,

that defendant has waived his right to review of this alleged error where he failed either to object to the questions at trial or to include this issue in his written post-trial motion.

■■ Defendant cites 11 instances of allegedly improper cross-examination. In only three, however, did defendant object on the ground now urged as error. As to the remaining eight, we consider them waived. Our supreme court, in *People v. Carlson* (1980), 79 Ill. 2d 564, 576, 404 N.E.2d 233, stated:

> "It is fundamental to our adversarial system that counsel object at trial to errors. * * * The rationale underlying this procedural requirement is based on the need for timely resolution of evidentiary questions at trial. * * * Thus, we have generally held that the failure to object to the admission of evidence operates as a waiver of the right to consider the question on appeal."

The waiver doctrine is not absolute. Rule 615(a) (Ill. Rev. Stat. 1979, ch. 110A, par. 615(a)) provides in pertinent part that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." This rule permits review of alleged errors in cases where the evidence is closely balanced and in cases where the errors are of such magnitude that the commission thereof denies the accused a fair and impartial trial. (*Carlson*, at 576-77.) Defendant does not claim and we do not find that the evidence of defendant's sanity at the time of the offenses was "closely balanced." Nor are we able to conclude that the error could have denied defendant a fair and impartial trial. In *People v. Zemola* (1972), 9 Ill. App. 3d 424, 292 N.E.2d 195, the court held that the defendant had waived any objection to the propriety of asking a witness to express an opinion as to defendant's "sanity" where at trial he failed to object to either the question or the answer. See also *People v. White* (1970), 131 Ill. App. 2d 652, 264 N.E.2d 228.

■■ As we have previously noted, defendant did object at trial to three of the questions which he now cites as error. Those objections, however, were not preserved in his written post-trial motion and the point must now be deemed waived. Ill. Rev. Stat. 1977, ch. 38, par. 116—1; *People v. Precup* (1978), 73 Ill. 2d 7, 16, 382 N.E.2d 227.

Assuming, *arguendo*, that defendant had made timely objections to all of the questions and had thereunder raised them in his post-trial motion, nevertheless we would not find that reversible error was committed.

The statute defining insanity (Ill. Rev. Stat. 1975, ch. 38, par. 6—2(a)) provides:

> "A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he

lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." ■■ In *People v. Zemola* the court noted that the word "sanity" is "a legal term susceptible of different tests depending on the cause of action, e.g., competency [fitness] hearing; post criminal trial; will contests; commitment proceedings." (9 Ill. App. 3d 424, 430.) Because of their equivocal and ambiguous meanings, it is improper to ask a witness to express an opinion solely in terms of "sanity" and "insanity." But our examination of the record reveals that each defense expert who was asked to state his opinion in these terms was also questioned in the proper language of the statute. Although it may have been preferable to frame all questions relative to defendant's sanity in the words of the statute, we are unable to conclude that defendant suffered any substantial prejudice by the questions that were asked. See *People v. White* (1971), 131 Ill. App. 2d 652, 656.

## II and III

Defendant's second and third arguments concern the propriety of the State's use of the "Rosenham Report" in cross-examination of defendant's principal expert witness, Dr. Katz.

The Rosenham report was a 1973 study at Stanford University in which 12 normal persons were sent to several hospitals with instructions to manifest various symptoms of psychosis. Apparently all of the test cases were admitted and diagnosed as psychotic. Upon admission, all 12 immediately ceased exhibiting their "symptoms" but it was not until 52 days had passed that the last person was finally released. The State cross-examined Dr. Katz regarding this study and he stated that the study is contained in some basic texts used in university psychology courses. Dr. Katz was then asked if he was aware of the fact that defendant had attended college. No proof of defendant's attendance was presented to the jury. Defendant now argues that it was improper to cross-examine Dr. Katz on the basis of a study whose authoritativeness was never established and thereafter to suggest that defendant might have read this study in college where no evidence was ever introduced that he went to college. The State asks us to consider these issues waived.

We must point out that defendant never objected to the State's use of the Rosenham report in cross-examining Dr. Katz. In fact, on redirect, defendant himself continued the questioning regarding the study. No mention was made of the report in defendant's post-trial motion and this issue could be deemed waived. Moreover, although defendant did object to the question regarding his attendance at college, he never requested an instruction to disregard that question once the State failed to present any proof and did not raise it as an issue in his motion for a new trial. This issue has also been waived. We find no reason why either issue should be

reviewed under the plain error rule. Even if we were inclined to reach these contentions, we would not concur that reversible error was committed.

Prior to the supreme court's opinion in *Darling v. Charleston Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253, the Illinois cases had held that an expert witness could be interrogated only about those texts upon which he expressly based his opinion. In *Darling* these decisions were overruled:

> "To prevent cross-examination upon the relevant body of knowledge serves only to protect the ignorant or unscrupulous expert witness. In our opinion expert testimony will be a more effective tool in the attainment of justice if cross-examination is permitted as to the views of recognized authorities, expressed in treatises or periodicals written for professional colleagues. * * * The author's competence is established if the judge takes judicial notice of it, or if it is established by a witness expert in the subject." *Darling*, at 336.

■■ In the case at bar, Dr. Katz did not concede the authoritativeness of the Rosenham report. No other expert witness established its authority as a recognized writing in the field, and the trial court did not take judicial notice of its authoritativeness. It was therefore improper to cross-examine on the basis of the study. (See *People v. Behnke* (1976), 41 Ill. App. 3d 276, 353 N.E.2d 684; *People v. Hart* (1980), 88 Ill. App. 3d 484, 490, 410 N.E.2d 633.) This error does not in our opinion require reversal.

■■ Defendant does not question the sufficiency of the evidence proving him sane at the time of the offenses, evidence which we believe was overwhelming. Moreover, the obvious thrust of interrogating Dr. Katz regarding the Rosenham report was to prove that symptoms characteristic of psychosis, particularly that of schizophrenia, could be feigned successfully. Dr. Katz admitted that it was possible to be misled in diagnosing symptoms similar to those described in the study. All of the defense witnesses who were asked conceded that defendant had tried to manipulate their interviews and had exhibited some signs of "faking" symptoms. In our opinion defendant was not prejudiced by the prosecutor's use of the study.

■■ Nor do we find any prejudice in asking Dr. Katz if he knew that defendant had attended college. Although the fact of defendant's attendance was never presented to the jury, the presentence investigation report indicated that defendant had gone to college in Arkansas for three years. The question was not asked in bad faith. More significantly, Dr. Katz testified that his opinion of defendant's sanity on the date of the offenses would not have been affected by knowledge of the fact that defendant had attended college. The prosecution's questioning regarding the Rosenham report did not prejudice defendant's case.

## IV

In his fourth argument defendant contends that the trial court erred in failing to instruct the jury on the mental states required to commit the crimes of armed robbery, rape and deviate sexual assault. The State responds that defendant has waived this issue by not submitting an instruction on this issue or raising it in his post-trial motion. The State argues further that the jury was properly instructed.

Section 4—3 of the Criminal Code (Ill. Rev. Stat. 1975, ch. 38, par. 4—3) provides that a person is not guilty of an offense (with an exception not applicable here) unless, with respect to each element described by the statute defining the offense, he acts while having one of the mental states described in sections 4—4 through 4—7 of the Code, *i.e.*, intent, knowledge, recklessness or negligence. The statutes defining the offenses of armed robbery, rape and deviate sexual assault do not prescribe a particular mental state. By the terms of section 4—3(b), therefore, any mental state defined in sections 4—4 (intent), 4—5 (knowledge), or 4—6 (recklessness), is applicable. "The State need only prove general intent to satisfy the *mens rea* of rape and deviate sexual assault." (*People v. Utinans* (1977), 55 Ill. App. 3d 306, 315, 370 N.E.2d 1080; *People v. Gold* (1967), 38 Ill. 2d 510, 516, 232 N.E.2d 702.) The same is true of the offense of robbery. See *People v. Banks* (1979), 75 Ill. 2d 383, 392, 388 N.E.2d 1244; *People v. Lamprey* (1979), 79 Ill. App. 3d 1065, 1068, 398 N.E.2d 1076.

■■ Defendant does not allege that general intent was not proven at trial. Instead, he argues that the jury should have been instructed that the State had the burden of proving beyond a reasonable doubt that at the time defendant committed the offenses he had the requisite mental state. Defendant, however, offered no instruction on this issue, and it is well settled that for an instruction to be tendered to the jury on a particular point, it is the duty of defendant to prepare and ask for the instruction. A trial judge has no duty to give instructions *sua sponte* where a defendant does not tender them, and a defendant cannot complain upon review that an instruction was not given when he never tendered that instruction at trial. (*People v. Nutall* (1980), 91 Ill. App. 3d 758, 415 N.E.2d 628.) Only recently our supreme court has reiterated these established principles. (See *People v. Tannenbaum* (1980), 82 Ill. 2d 177, 180, 415 N.E. 1027.) Moreover, as we have previously stated, issues not raised in a post-trial motion are waived for appellate review.

In *Tannenbaum* the court noted at page 182 that a limited exception to the waiver role appears in Rule 451(c) (Ill. Rev. Stat. 1979, ch. 110A, par. 451(c)), which permits the review of "substantial defects" in instructions "if the interests of justice require." This exception has been narrowly restricted to correct "grave errors" (*People v. Jenkins* (1977), 69 Ill. 2d 61, 66, 370 N.E.2d 532), or to be applied where the case is close factually and

fundamental fairness requires that the jury be properly instructed (*People v. Joyner* (1972), 50 Ill. 2d 302, 307, 278 N.E.2d 756). Since defendant does not argue that the case is "close factually," the only question that remains to be resolved is whether the court's failure to instruct the jury as to one of the mental states set forth in sections 4—3 through 4—6 of the Criminal Code (Ill. Rev. Stat. 1975, ch. 38, pars. 4—3 to 4—6) constitutes "grave error."

Error has been found in the trial court not giving on its own motion the Illinois Pattern Jury (IPI) instruction on presumption of innocence and reasonable doubt. (*People v. French* (1972), 5 Ill. App. 3d 908, 284 N.E.2d 481.) Error has also been found in not instructing the jury as to the "definition" and "elements of the crime" charged. *People v. Davis* (1966), 74 Ill. App. 2d 450, 454, 221 N.E.2d 63; *People v. Worsham* (1975), 26 Ill. App. 3d 767, 770, 326 N.E.2d 134.

In the case at bar the trial court instructed the jury in the elements of the offenses as they are defined in the statutes. Repeatedly this type of instruction has been held sufficient to inform the jury of the requisite elements. (*People v. Frenchwood* (1963), 27 Ill. 2d 412, 413-14, 189 N.E.2d 328.) Defendant cites no case and we are aware of none in which the court's failure to instruct the jury on its own motion as to a mental state not specifically required by the statute defining an offense was held sufficiently serious to warrant relaxation of the strict waiver rule. Indeed, the case authority is to the contrary.

In *People v. Marchese* (1975), 32 Ill. App. 3d 872, 883, 336 N.E.2d 795, the court held that "the trial judge was under no duty to *sua sponte* instruct the jury on the mental element of the offense" of indecent liberties with a child (Ill. Rev. Stat. 1979, ch. 38, par. 11—4) where the section of the statute charged does not prescribe a particular mental state. Here the court did instruct the jury in the language of the statutes.[1] Although it might have been error to *refuse* an instruction stating that a certain mental state was necessary (see *People v. Ulatowski* (1977), 54 Ill. App. 3d 893, 368 N.E.2d 174), none was offered here. Moreover, even where a *specific* intent must be alleged and proved, defendant's failure to object to an improper instruction will preclude appellate review. In *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331, the supreme court held that an instruction erroneously allowing the jury to convict a person of attempt murder without finding that defendant had the specific intent to kill the victim was not subject to review on appeal where the defendant

---

[1] Parenthetically, we note that the burglary instruction, which defendant does not criticize, stated that defendant could not be found guilty unless the State proved beyond a reasonable doubt that he *knowingly* entered the victim's apartment with the *intent* to commit the crime of rape or armed robbery. See *People v. Burks* (1975), 29 Ill. App. 3d 74, 79, 331 N.E.2d 581.

failed to object to it at trial. The instruction "was bad in that it told the jury that a person may commit the crime of murder when he has not only the intent to kill, but also when he has certain mental states other than an intent to kill." Nevertheless, "the inclusion of these other mental states" in the instruction did not constitute "grave error" requiring review under Rule 451(c).[2]

● 8 Defendant's reliance on *People v. Stromblad* (1978), 74 Ill. 2d 35, 383 N.E.2d 969, is misplaced. *Stromblad* was an obscenity prosecution. Prior to the trial in that case, the Illinois Supreme Court had interpreted the Illinois obscenity act to require, as an element of the offense, proof that the material in question was "utterly without redeeming social value." This element was not included in the charge to the jury in *Stromblad*, and it was on this basis that the conviction was reversed. In the case at bar the jury was instructed in the elements of the offenses as defined in the statutes. The applicable pattern jury instructions were given, and the jury was provided with the proper definition of insanity under Illinois law. Each issues instruction contained, as one of the elements which had to be proved beyond a reasonable doubt, that defendant was sane at the time of the offense. In our judgment the jury was adequately instructed. Since the error of which defendant now complains was not of a magnitude to require our review under the principles previously enunciated, further discussion of defendant's contention is unnecessary.

V

Defendant's final argument on appeal is that his sentences must be vacated and the cause remanded for a new sentencing hearing because defendant was not afforded the opportunity to be sentenced under the law in effect at the time the offenses were committed. We agree.

The offenses here were committed on May 11, 1977. The determinate sentencing provisions of the revised Code of Corrections went into effect on February 1, 1978. Section 8—2—4(b) of the Code specifically provides:

> "Prosecution for any violation of law occurring before the effective date of this amendatory Act of 1977 is not affected or abated by this amendatory Act of 1977. If the defendant has not been sentenced before the effective date of this amendatory Act of 1977, he shall have the right to elect to be sentenced under the law as it existed at the time of his offense or under the law in effect on

---

[2] By way of analogy we point out that "a material element of every crime is a voluntary act." (Ill. Rev. Stat. 1979, ch. 38, par. 4—1.) Yet the trial court is not obligated to submit on its own motion the IPI Criminal Instruction (No. 4.14) incorporating this provision. *People v. Grant* (1978), 71 Ill. 2d 551, 559-60, 377 N.E.2d 4.

and after the effective date of this amendatory Act of 1977." Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1008—2—4(b).

■■ Defendant in the instant case was sentenced on November 26, 1979, for crimes which he committed on May 11, 1977. Under the express provisions of the statute, therefore, defendant was entitled to elect between the sentencing alternatives. (*People v. Grant* (1978), 71 Ill. 2d 551, 561, 377 N.E.2d 4.) We have previously held that "fundamental fairness requires that a defendant be given the opportunity to choose the sentencing alternative which he considers more favorable." (*People v. Brown* (1977), 47 Ill. App. 3d 920, 933, 365 N.E.2d 514.) Indeed, even in the absence of the statutory authority we believe this is mandated by the supreme court's decision in *People v. Hollins* (1972), 51 Ill. 2d 68, 71, 280 N.E.2d 710. The record is devoid of any evidence that defendant knew of his right to elect to be sentenced under the law in effect at the time the offenses were committed. The trial court did not admonish him of this right. As a result, defendant's sentences must be vacated and the cause remanded for a new sentencing hearing.

For the foregoing reasons the judgments finding defendant guilty of burglary, armed robbery, rape and deviate sexual assault are affirmed. The sentences imposed on these judgments are vacated and the cause is remanded to the circuit court for a new sentencing hearing where defendant may be allowed to make an informed election between the sentencing provisions in effect at the time of the offenses and those in effect on the date of sentencing.

Affirmed in part, vacated in part and remanded with instructions.

HARTMAN, P. J., and STAMOS, J., concur.