**UNITED STATES, Appellee,**

v.

**Specialist Four Joseph A. WARD SSN 103–50–0499, United States Army, Appellant.**

**SPCM 16119.**

U. S. Army Court of Military Review.

23 Nov. 1982.

Captain Gunther O. Carrle, JAGC, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr, JAGC, Major Raymond C. Ruppert, JAGC, and Captain Dennis E. Brower, JAGC.

Captain Thomas E. Booth, JAGC, argued the cause for the appellee. With him on the brief were Colonel R.R. Boller, JAGC, Major John T. Edwards, JAGC, and Captain Paul K. Cascio, JAGC.

Before FULTON, CLAUSE and COHEN Appellate Military Judges.

### OPINION OF THE COURT

FULTON, Senior Judge:

The issue before us is whether appellant's plea of guilty to a charge of unlawfully opening mail matter was improvident because of the existence of a defense of involuntary intoxication.

Appellant was charged with violating Article 134 of the Uniform Code of Military Justice, 10 U.S.C. § 934 (1976), by "unlawfully open[ing] certain mail matter, to wit: letters addressed to certain other members of Company A, US Army Personnel Control Facility ... Fort Dix, New Jersey, which said letters were then in the mail room of said unit before said letters were delivered to the persons to whom they were directed." After accepting the plea of guilty (which did not involve a plea bargain), the military judge sentenced him to be reduced to the grade of Private E–1, to be confined at hard labor and to forfeit $200.00 pay monthly each for a period of four months, and to be discharged with a bad-conduct discharge. The convening authority approved that sentence.

The appellant described to the military judge the event that led to the charges succinctly as follows:

Well, sir, on the morning of the 28th of January 1981, about ten-thirty, I was on my way over to the commissary. I was waiting for it to open up. I was going there to pick up a few things. While I was sitting there in my car waiting, a guy approached me and asked me if I'd like to give him a jump for his car to help get his car started, so I said, 'Sure.' I gave him a jump and then in return he asked me if I wanted to smoke a joint with him. I said, 'Sure.' I had a lot of problems on my mind anyway and I figured that would ease the problems. And then after about ten minutes had went by I realized that it just wasn't a regular joint, that it was something else, and I asked him and he told me it had PCP on it. I just left my car right there at the commissary and I walked back to the company, because I—I couldn't walk too good or anything. I knew I wouldn't be able to drive. I went back to my unit, and I went into my mail room and I just started throwing things around. I—I didn't even realize that I had done any of this until the next day when I had come back into the mail room and I seen everything around. I gathered everything up and put it in the safe because I didn't know what I was going to do with it. I was too afraid to go in there and tell the first sergeant what had happened, because I knew he was going to cancel my leave. I hadn't been on leave in quite awhile. And I figured it would just be safe in the safe until I'd got back and could get things straightened out. So I was home on leave and they found it— the stuff in the safe. When I came back I went down to CID and made the report—or they came and got me. I didn't have to go down there. And I told them what had happened. They took my back to my company. The first sergeant just told me to wait and see what happens to me now.

Record at 18–19.

Immediately after entering the plea of guilty, appellant's counsel addressed the military judge as follows:

DC: Just one point of clarification, sir, since this is charged under Article 134, this is a general intent crime. Just to clar—

MJ: The elements of the offense of unlawfully opening mail matter are these . . . .

DC: Yes, sir. I just—There may have been during the providency [sic] a question as to possible intoxication. I just want to clarify that. It's based upon research in the area, but that is not a defense to this charge.

MJ: I will inquire fully into the pleas of guilty to ascertain whether they're provident, but I don't see that voluntary intoxication would be a defense in this case.

Record at 12–13.

After hearing appellant's explanation of the event, quoted above, the military judge questioned him as follows:

MJ: How much do you recall about what you did when you got back to the mail room? What specific acts do you recall?

ACC: Well, sir, I don't even—I don't even know what kind of mail was opened. I—I just know what people been telling me about the mail. I just—I know that I did it, but I just—I don't know what I did. I don't know how much—I know that I opened a lot of it. It was old mail. It wasn't any new mail.

MJ: How is it that you know that? Do you remember just opening some mail?

ACC: No, sir. I don't even remember actually opening it. I just remember throwing it around, but nobody else could have done it but me, because nobody else had access to be in there but me. Yes, sir, I'm the only person that had a key.

\* \* \* \* \* \*

MJ: Going back to the PCP and the marihuana cigarette, was smoking that a voluntary act on your part? Did anyone force you to smoke that?

ACC: Yes, sir, it was voluntary. Nobody forced me to smoke it.

Record at 19–20. There was no further inquiry pertinent to this issue before the plea of guilty was accepted. In an unsworn statement before sentence, upon questioning by his counsel, appellant said

Q: When you were opening the mail and causing disarray in the mail room, were you a sober person at that time?

A: No, sir.

Q: Okay. What had happened up until— Explain to the court. What you've told the court previously was considered for the purposes of your plea and we're now talking about your sentence.

A: I was high on—I thought it was marihuana. It turned out to be—It was PCP, angel dust. And just—

Q: Were you aware of what you were doing at the time?

A: No, sir. I didn't have any idea of what I was doing for a good three hours.

Q: Would you have normally done something like this?

A: No, sir.

Q: Do you normally use PCP?

A: No, sir.

Record at 52.

In addition to asserting that the sentence to a punitive discharge is inappropriate under the circumstances, appellant contends that the plea of guilty was improvident because the facts shown constitute a defense of involuntary intoxication in that the ingestion of the PCP (phencyclidine) was involuntary and the opening of the mail was caused thereby. Even if the defense was not established, appellant argues, the plea was nevertheless improvident because the military judge did not make a sufficient inquiry into the possible existence of the defense of involuntary, as distinguished from voluntary, intoxication. Our answer to the first argument—namely, that the facts indicated do not raise a defense of involuntary intoxication—moots the second.

"A temporary loss of reason which accompanies or is part of a drunken spree and which is not the result of delirium tremens

or some other mental defect, disease, or derangement is not insanity in the legal sense." Manual for Courts-Martial, United States, 1969 (Revised edition), Change 3, para. 216*h* (1980). "Since the refusal to place intoxication and insanity on the same basis (insofar as criminal incapacity is concerned) is due to the fact that the former is usually a 'voluntarily contracted madness,' it follows that they should be dealt with alike when the intoxication is involuntary, and such is the law ...." R. Perkins, *Criminal Law* 782–83 (1957) (footnote omitted).

Among the circumstances of intoxication said to be involuntary is the circumstance

in which, as a result of a genuine mistake as to the nature or character of the liquor or drug, the drunkness has resulted from taking something not known to be capable of producing such a result. Down through the ages, with different forms of wording, has been echoed the rule that intoxication is not voluntary if brought about by the fraud, artifice or stratagem of another .... What prevents the intoxication from being voluntary in these cases of fraud is not the trickery of the other person but the innocent mistake of fact by the one made drunk, and an actual ignorance of the intoxicating character of the liquor or drug has the same effect whether the mistake is induced by the artifice of another or not.

R. Perkins, *Criminal Law* 783–84 (1957) (footnotes omitted); *see generally City of Minneapolis v. Altimus,* 306 Minn. 462, 238 N.W.2d 851, 856–57 (1976) (opinion of Kelly, J.); Annot., 73 A.L.R.3d 195, 208–10, 212–14, 218–20 (1976).

For purposes of this decision, we will assume that the marihuana cigarette had in fact been laced with PCP (phencyclidine), that the appellant was unaware of it, and that it could be proved that the PCP (rather than the marihuana) produced in him a reaction amounting to insanity as currently defined in military law. The question then becomes whether his mental defect or disease was nonculpably incurred. *See United States v. Foley,* 12 M.J. 826, 829 (N.M.C.M.

R.1981), *pet. denied,* 13 M.J. 373 (C.M.A. 1982).

The cases involving the unknown presence of a second substance in one consumed voluntarily are difficult if not impossible to reconcile. In some early cases (possibly reflecting contemporary moral values as to the evil of drink), the intoxication apparently was regarded as culpable even if the beer or ale voluntarily consumed had been drugged. *See Bennett v. State,* 161 Ark. 496, 257 S.W. 372 (1923); *Cribb v. State,* 118 Ga. 316, 45 S.E. 396 (1903); *but cf. Pribble v. People,* 49 Colo. 210, 112 P. 220 (1910) (drug deliberately administered for purpose of robbing appellant); *State v. Alie,* 82 W.Va. 601, 96 S.E. 1011 (1918) (same). More recently, an Illinois appellate court, holding that involuntary intoxication could constitute a defense to the general intent crime of rape, ruled that the trial judge should have permitted the rape defendant to introduce evidence relating to that defense. The evidence offered was that marihuana he had consumed, prior to drinking alcohol, had, without his knowledge, been laced with "angel dust." *People v. Brumfield,* 72 Ill.App.3d 107, 28 Ill.Dec. 442, 390 N.E.2d 589 (1979).

■ Certainly, when the substance adulterated with a dangerous drug is itself a legal consumable, and one which scarcely would be expected to have been altered, the defendant should be exculpated. *See Commonwealth v. McAlister,* 365 Mass. 454, 313 N.E.2d 113 (1974), *cert. denied,* 419 U.S. 1115, 95 S.Ct. 794, 42 L.Ed.2d 814 (1975) (coffee drugged with LSD) (by implication); *People v. White,* 131 Ill.App.2d 652, 264 N.E.2d 228 (1970) (beer drugged) (by implication). However, in the circumstances revealed by this case, we think the rule should be otherwise.

■ The substance appellant agreed to consume was not innocent coffee or even legal alcohol, but was a contraband drug, banned in part because of its effect, often unpredictable, on human behavior. *See, e.g.,* U.S. Dep't of Health and Human Services, DHHS Pub. No. (ADM) 80–706, *Let's Talk About Drug Abuse* (1980 Revision);

National Institute on Drug Abuse, Research Monograph 31, *Marihuana Research Findings: 1980* 15–17, 26–29 (1980). No government rules or industry standards regulate the purity or strength of this drug; indeed, the variety of strains can produce varied reactions even when the drug is used alone. *See Guns, Grass—And Money,* Newsweek, 25 Oct. 1982 at 36–41, esp. 38.

We think it is common knowledge that marihuana is often mixed with PCP. *See, e.g.,* R. Linder, S. Lerner & R. Burns, *PCP: The Devil's Dust* 8–11 (1981). The two drugs share many names, most of which are also used in referring to marihuana alone. *Id.* Since marihuana and PCP each are customarily ingested by smoking, even the term "joint," used by appellant and his would-be benefactor, can refer to either or both of those drugs. *Id.*

Under such circumstances, we do not regard the resulting intoxication as nonculpable. *Compare State v. Hall,* 214 N.W.2d 205 (Iowa 1974) (knowing ingestion of mind-affecting drug of unknown potency), *with People v. Carlo,* 46 A.D.2d 764, 361 N.Y.S.2d 168 (1974) (affirmative deception involved). Therefore, the facts recited by appellant were insufficient to raise a defense of involuntary intoxication, the military judge's inquiry into the providence of the plea was adequate, and the plea of guilty was in fact provident. We further find the sentence appropriate.

The findings of guilty and the sentence are affirmed.

Judge CLAUSE and Judge COHEN concur.